This action is brought to recover damages on account of the conversion of certain grain in which the plaintiff claimed an interest by reason of a farm laborer's lien. The cause was tried to a jury and the plaintiff had a verdict for the amount claimed. Thereafter, the defendant moved for judgment notwithstanding the verdict or for a new trial, which motion was denied and judgment was entered on the verdict. This appeal is from the judgment and from the order denying the defendant's motion.
It appears that the plaintiff lived with his son John. Another son, Harry, also lived with John. During the season of 1923, the plaintiff, John, and Harry, were engaged in farming. The plaintiff claims that from the 1st of April until the 18th of September, 1923, he was employed by John, and during that time performed services as a farm laborer. He took steps to perfect a farm laborer's lien upon the grain raised, as he claims, by John. This grain was sold to defendant, which refused to deliver the grain to plaintiff on demand. The defendant, on the other hand, contends that plaintiff, John, and Harry were jointly engaged in this farming adventure, and that in fact plaintiff was not employed by John, and therefore the latter had no valid lien or right to the grain in question.
The defendant bases this appeal on three grounds: (1) Undue interest and activity on the part of the trial court in behalf of the plaintiff and resulting in prejudice to the defendant; (2) The insufficiency of the evidence to sustain the verdict as returned; and (3) Erroneous *Page 545 
rulings in the reception or rejection of evidence. Defendant has specified many errors, but they, in the main, touch these three propositions.
We have examined the record. It appears therefrom that the trial court did interrogate witnesses and suggest that certain evidence was inadmissible. Defendant's contention is that this was improper in that it tended to evidence an undue interest and activity on the part of the trial judge in behalf of the plaintiff; that it tended to influence the jury, and generally was prejudicial to the defendant. A trial judge has a large discretion as to how a trial shall be conducted. He is more than a mere referee whose function it is to see that any contest is carried on in strict accordance with the rules to the end that the decision may be awarded to the more skillful. It is his duty to keep the examination of witnesses reasonably within bounds so that the real issues may not be obscured by irrelevant and immaterial evidence. It is always proper for him to bring to light such facts as may disclose the merits and justice of the cause or defense, provided only, that he does this in a proper manner and without violation of any of the rules of evidence. State v. Fury, 53 N.D. 333, 205 N.W. 877. But he should do these things only when necessary, and then with the greatest circumspection. State v. Hazlett, 14 N.D. 490, 105 N.W. 617. The presumption is that the court's action was occasioned by a sense of duty; that it was actuated by proper motives and properly conducted. Buchanan v. Occident Elevator Co. 33 N.D. 346, 157 N.W. 122. We are not prepared to say that the trial court overstepped the bounds of discretion in this instance.
Defendant urges that the evidence is insufficient to sustain the verdict as returned. We are not here concerned with questions of credibility of witnesses or weight of evidence. If there was any evidence which viewed in the light most favorable to the plaintiff would justify a reasonable man in returning the verdict complained of, it was sufficient. We have examined the record and think it is enough to say that in our judgment the evidence is sufficient.
We do think, however, that there is merit to some of the defendant's assignments touching rulings of the trial court on questions of evidence. The principal question arising on the issues as made by the pleadings and submitted to the jury was as to whether the plaintiff *Page 546 
was employed in good faith by his son John. It appears that the Bryngelsons farmed a large amount of land during the season of 1923. They all lived together with John. John seems to have owned most of the equipment which was used in the farming operations, though Harry owned some. A portion of the land farmed was Indian land rented from the government. It is conceded that a part, at least, of the labor for which the lien claim was filed, was performed by the plaintiff upon this Indian land. Plaintiff as well as the boys testified that this land was in fact farmed by Harry and that the labor done on the land by the plaintiff was done under John's orders and in exchange for work in turn done by Harry for John. It also appears that in the spring of 1923, certain seed grain was bought and that this was used as seed on the Indian land. It further appears, however, that the seed lien statement was in fact signed by the plaintiff and John, and recited that they were the purchasers of the same. Plaintiff and Harry also mortgaged certain of the crops grown on these lands. On cross-examination of the plaintiff evidence was elicited showing that plaintiff had leased the Indian land, — some 240 acres. The leases were in writing subscribed by the plaintiff. On this examination, plaintiff admitted that he had signed them, but in explanation stated that he had taken them in his own name for Harry for the reason that there were certain outstanding judgments against Harry and that this was the only way in which Harry could be protected. Plaintiff further testified that he had signed the seed lien statement for the reason that while the seed was bought for Harry it was to be used upon the Indian lands which were leased in the name of the plaintiff, and that therefore he, plaintiff, was advised that it was necessary for him to sign the statement. In this connection defendant offered the leases, the lien statement, and the mortgage in evidence. Plaintiff objected to their admission on the ground that they were irrelevant and immaterial and did not in any way tend to show that in fact plaintiff was not employed by John. This objection was sustained, we think, erroneously. The principal question for determination by the jury was as to whether plaintiff was employed by John in doing the work that was done, including that done on the land thus rented. Certainly these various instruments would tend to establish the contrary. While the plaintiff admitted executing them and offered an explanation therefor, nevertheless, *Page 547 
the defendant was entitled to have them received in evidence and to cross-examine the plaintiff at length regarding them. They were relevant on the principal question to be determined. We cannot say that the defendant suffered no prejudice by their exclusion.
John was called as a witness on the part of the plaintiff. He testified positively that his father was not farming during the season of 1923, but was working for him for wages. On cross-examination the defendant inquired of him as to whether during seeding time he had not borrowed a grain drill from one of his neighbors, and upon his answering in the affirmative, further inquired whether he did not on that occasion tell this neighbor that he wanted to borrow the drill to sow the old man's, meaning his father's crop. This was objected to as hearsay, not said in the presence of plaintiff, and not binding upon him. The objection was sustained. It seems apparent in view of the issues of fact to be determined by the jury and the testimony of John relative to the matters thus in issue, that the inquiry of John as to statements wholly inconsistent with his testimony, was proper by way of impeachment. We cannot believe that this inquiry was made for any other purpose. Indeed, counsel stated that it was for impeachment purposes. The ruling was erroneous.
One Knutson was called as a witness for the plaintiff. He was a neighbor of the Bryngelsons. Inquiry was made of him as to whether the plaintiff had farmed for himself during the season of 1923. He answered that the plaintiff "was working for John he told me." The defendant objected to the question as calling for hearsay, and the objection was sustained. The witness, however, answered the question as above set forth. Whereupon the defendant moved to strike the answer out as hearsay. The court made no ruling simply remarking that the witness had not answered. Manifestly, the answer should have been stricken. The plaintiff now contends that the witness talked in a low tone of voice and that the court had not heard the answer. The record, however, does not disclose these facts. It simply shows the question, the objection, the answer, the motion, and the court's remark. Ordinarily, proper practice would have required that counsel call to the court's attention the fact that there was an answer in view of the statement of the court evidencing a misapprehension as to the fact of the answer. Standing alone, we would not be inclined to reverse on *Page 548 
this point. However, in view of the several rulings assigned as erroneous, and which we think to have been so to the prejudice of defendant as above indicated, we are of the opinion that the judgment appealed from must be reversed and a new trial ordered.
CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.