**BERGQUIST–WALKER REAL ESTATE, INC., Plaintiff and Appellant,**

v.

**WILLIAM CLAIRMONT, INC., and William Clairmont, Defendants and Appellees.**

**Civ. No. 10627.**

Supreme Court of North Dakota.

July 11, 1984.

---

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Patrick A. Conmy, of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

This is the second time this matter has been before us on appeal. In *Bergquist-Walker Real Est. v. Wm. Clairmont*, 333 N.W.2d 414 (N.D.1983), we reversed a judgment n.o.v., modified the order granting a new trial to require a new trial on all issues, not only that of damages, and, as modified, we affirmed the order granting a new trial. On remand a new trial was held and the jury returned a verdict in favor of the defendants (hereinafter Clairmont). The plaintiff (hereinafter Walker) appealed from the judgment and from the order denying its motion for a new trial. We affirm.

The facts involved in the transactions between Walker and Clairmont are referred to in our previous opinion and we will not repeat them here. It is sufficient to note that Walker alleged that he had an oral contract with Clairmont to sell certain lands purchased by Clairmont. Clairmont denied Walker the right to attempt to sell the property and Walker brought an action against Clairmont alleging breach of the contract by Clairmont. Additional facts relative to specific issues will be referred to in the discussion of the particular issue.

The first three issues raised by Walker concern a question asked of Clairmont by counsel for Walker. As we have noted above, Walker's contention was that he had an oral agreement with Clairmont concerning the sale of the property and Clairmont's contention is that there was no such agreement. The following colloquy occurred between counsel for Walker, Clairmont, and the trial judge:

"Q. Well, that's my next question, Mr. Clairmont. After you got sole ownership of the property, did you ever call Jack Walker up and say anything about that the group decided about your listing agreement is off?

"A. No, I don't know that I did or didn't.

"Q. Did you write him a letter to that effect?

"A. No, I don't think so.

"Q. In any way did you convey to Mr. Walker that the deal that the group had made with him was off?

"MR. CONMY: Your Honor, I will object to that on the grounds of facts not in evidence. It assumes the group made a deal. That is not what the witness has testified to.

"THE COURT: I am going to sustain that objection. The two of you seem to be making certain assumptions, and your questions and his answers are not quite the same; at least, that's the way I understand what he said. You just referred to a deal and to an agreement, and I never understood him to say an agreement was struck.

"MR. CHAPMAN: No, I don't agree, your Honor.

"THE COURT: Well, perhaps you should examine further on the subject.

"BY MR. CHAPMAN:

"Q. Is there any question, Mr. Clairmont, that the group wanted Mr. Walker to market this property?

"A. At that time the group planned on having him do it. That doesn't necessarily mean that I did.

"Q. But you were part of that group.

"A. Yes, I was part of the group.

"Q. Now, is there any question in your mind that at least the group understood that there was an agreement with Mr. Walker to market the Tyler property?

"A. There never was an agreement, because we never got that far.

"Q. I see. Well, then, your previous testimony, Mr. Clairmont, maybe you should clarify it, at least for my sake. Are you saying that the group merely intended to make an agreement with Mr. Walker but did not do it?

"A. As I remember, the group contemplated having Jack Walker sell it if the group went through with it the way it happened they were going to at first.

"Q. All right. Well, in any event, Mr. Clairmont, after the property came into your own name, did you in any way communicate to Mr. Walker that, whatever the group might have intended to do, you did not intend to do it?

"A. I don't remember that I did. But I never told him that he was going to have it."

Walker contends that the trial court's action in sustaining the objection on the ground the question assumed facts not in evidence constitutes reversible error where, as here, the primary issue was the existence of an oral contract. Walker argues that even if Clairmont had not conceded that there was a "deal," previous witnesses constituting "the group" testified to prior discussions with Walker concerning the sale of the property. In responding to that contention in the memorandum opinion and order denying the motion for new trial, the trial judge made the following observation:

"Insofar as sustaining the objection itself goes, the question was a 'Have you stopped beating your wife yet?' question. Had I required the witness to answer it, he would have found it necessary to endorse the proposition that an agreement existed, which was one of the main points in issue. It is important to note here that it was the *form* of the question which was objectionable. Had counsel reframed the question, he certainly

would have been permitted to inquire into the subject matter, which had to do with what, if any discussions were later had regarding the sale of these lots."

We agree with the observation of the trial judge. Our review of the transcript reveals that Clairmont surely did not concede the existence of any agreement or "deal" for Walker to sell the property. Walker urges the question asked of Clairmont did not necessarily imply that Clairmont conceded the existence of an agreement but rather referred to the testimony of the others involved in the group. However, our review of the transcript reveals that the testimony of these witnesses is, for the most part, equivocal on the issue of whether or not an actual agreement had been reached. Although Walker contends that there were sufficient facts introduced into evidence from which the jury could have concluded that an agreement had been reached, and that this was the import of the question, we cannot so construe it. It is apparent to us that an answer to the question, whether negative or affirmative, would concede the existence of an agreement, and that concession was one which Clairmont had refused to make.

 It is the long-standing position of this court that the trial judge has discretion as to how a trial shall be conducted and that he is more than a referee whose function it is to see that any contest is carried on in strict accordance with the rules, to the end that the decision may be awarded to the more skillful; rather, it is the duty of the trial judge to keep the examination of witnesses reasonably within bounds, so that the real issues may not be obscured but he must do so in a proper manner and without violation of any of the rules of evidence. See, e.g., *Bryngelson v. Farmers' Grain Co.*, 54 N.D. 543, 210 N.W. 19 (1926). We conclude the ruling of the trial judge in this instance was within his discretion. *Eriksen v. Boyer*, 225 N.W.2d 66 (N.D.1974).

 In connection with this same portion of the trial, Walker claims that the comment of the trial judge that he "never

understood him to say an agreement was struck" was improper comment on the evidence and that it was for the jury to determine whether or not an agreement had been reached. In *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692, 696 (N.D. 1966), this court stated:

"A trial judge should, of course, maintain at all times an impartial attitude in the trial of the case over which he presides. He should not, by word, by question, by his attitude, or by any conduct on his part, do anything which may influence the jury in its consideration of the case. He should make no remarks which would show bias on his part in favor of any party to the lawsuit. Other than that, however, the trial judge is allowed great latitude and discretion in conducting the trial and, except for any obvious abuse of that discretion, his conduct of the trial will not be grounds for reversible error."

Although we agree that it was for the jury to determine whether or not an agreement had been reached, we cannot conclude that the comment can be considered improper. The record is clear that Clairmont had not conceded the existence of an agreement and, in the full context of the trial judge's remarks, as set forth earlier in this opinion, it is also clear that he was only attempting to explain his reason for sustaining the objection—presumably in an attempt to assist counsel should he have wished to explore the matter further. Walker attempts to distinguish *Hennenfent v. Flath*, 66 N.W.2d 533 (N.D.1954), in which this court held that remarks which merely state what the record showed as to certain matters do not constitute comments upon the testimony in the objectionable sense that they comment upon the credibility or weight to be given to testimony. Walker argues that, here, because the judge stated he "understood" Clairmont had not testified that an agreement had been reached, he is deprived of arguing to the jury that the testimony showed that there was an agreement between the group and Walker. We do not agree. Walker did, of course, argue to the jury that the testimony showed that Clairmont reached an agreement with Walker. What Clairmont said or did not say in his testimony, and what his actions or other transactions might imply or what other witnesses might testify to are different matters. The trial court's comments were limited to what Clairmont testified to on the record and in this respect the remarks are no different from the comments made by the trial judge in sustaining an objection in *Hennenfent, supra*. In *State v. Yodsnukis*, 281 N.W.2d 255 (N.D.1979), we observed that jurors are quick to be influenced by any opinion that they think the trial judge harbors about the merits of the case or the weight of certain evidence. In this instance the remarks of the trial judge did not reflect his opinion of the merits of the case or the weight of any evidence.

■ Walker next argues that the evidence was insufficient to justify the verdict and that the verdict is against the law. The duty of the trial judge in considering a motion for new trial grounded upon insufficiency of the evidence to sustain the verdict and our review of the trial judge's decision on the motion were discussed in *Bergquist-Walker Real Est. v. Wm. Clairmont, supra*. Briefly stated, on a motion for new trial the trial judge may, within limits, weigh the evidence and judge the credibility of witnesses; when the reason given in support of a motion for new trial is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence; in making this decision the trial judge must weigh *all* the evidence; and because the motion is addressed to the sound discretion of the trial court our review on appeal is limited to a determination of whether or not the trial court abused that discretion. See *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982). Here, the primary issue was the existence of an agreement between Walker and "the group," which was subsequently assumed by Clairmont, whereby Walker would sell the property for a commission. There was testimony on both sides of the issue but our re-

view of the record indicates there was sufficient evidence whereby the jury could have concluded that no agreement was reached. We therefore conclude that the trial court did not abuse its discretion in denying the motion for a new trial.

■ In the final issue on appeal, Walker argues that the trial court erred in its instruction to the jury defining a contract. The trial judge noted in his memorandum opinion denying the motion for new trial that had the matter been brought to his attention before the instructions were given to the jury he could have clarified them. The instructions were given to counsel for the parties a few days prior to trial. On the day of trial, in chambers, the trial judge asked for comments on the instructions. Counsel for both parties commented on certain aspects of the proposed instructions. The particular instruction which is the subject of this appeal was not discussed nor did either party object to it. Counsel for Walker concedes he did not notice the sentence in the instruction until he prepared the motion for new trial, but argues that the opportunity for comment on the instructions in chambers on the day of trial was not sufficient compliance with Rule 51(c), N.D.R.Civ.P. That particular provision of our rules provides that the giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court shall submit to counsel the written instructions which it proposes to give to the jurors and "shall ask for exceptions to be noted, and thereupon counsel must designate such parts or omissions of such instructions as he may deem objectionable." The rule further provides that a reasonably sufficient time shall be allowed counsel to take such exceptions and to note the same in the record of the proceedings.

In this instance the instructions were given to counsel a few days prior to the day of trial. Therefore, there was adequate time for counsel to review and to take exception to the instructions. Apparently Walker's position is that the statement by the trial judge, "Do you want to comment upon those, Dan? " does not constitute a request by the court for exceptions to the instructions. We do not agree. Counsel for both parties commented upon other portions of the instructions with which they were concerned and our review of the transcript of the meeting in chambers indicates that all parties, including the trial judge, considered this the time and place at which exceptions to the instructions were to be taken. In *Grzadzielewski v. Walsh County Mut. Ins. Co.*, 297 N.W.2d 780 (N.D.1980), the instructions were provided to counsel but, although subsequent proceedings were held in chambers concerning instructions requested by one of the parties, we noted that because the record did not clearly reveal that counsel were *asked* to note their exceptions and none were noted, we would treat the instructions as excepted to. Here, however, exceptions to other portions of the instructions were noted and we believe the court's question to counsel for Walker can only be construed to mean that the trial court was *asking* for exceptions to be noted as provided by the rule. In addition, counsel for Walker had candidly conceded that he did not note the sentence in the instruction until he prepared the motion for new trial, so we might assume that he would not have objected to the instruction even if the request of the trial judge were more specific.

This court has previously indicated, however, that Rule 51(c) is not an absolute rule and should not be applied inflexibly where manifest injustice would be a likely result. We have recognized that relief from the rule should be provided for in exceptional circumstances but that such circumstances are limited to those instances in which the error in the instruction is so plain, fundamental, and highly prejudicial that our failure to consider the error would result in a miscarriage of justice. See, e.g., *Bernhardt v. Rummel*, 314 N.W.2d 50 (N.D. 1981). Although we do not believe this is an exceptional circumstance or that there is error, much less any plain, fundamental, or prejudicial error, we will, because of the allegation that counsel was not specifically *asked* to note objections to the instruction,

briefly consider the instruction on its merits.

■ After approximately a page and one-half of definition of the term "contract" the trial court concluded the instruction with the following paragraph:

"The object of the contract is the thing to which the parties receiving the consideration agree to do or not to do. The agreement need not cover every detail, contingency, or possibility, but must address the essential terms. *The parties cannot agree to agree or 'agree in principle.'* " [Emphasis supplied.]

It is the last sentence with which Walker takes issue. He argues that parties can agree to agree and that the sentence "is such a simplistic statement that the jury would surely be confused because an agreement to agree is valid when the terms are fixed and, as in this case, only a part of the agreement is left to be inserted in the agreement. Walker alleges that he and Clairmont agreed that Walker would sell all of Clairmont's property. Left to be inserted in the agreement was the actual property to be sold."

In his order denying the motion for new trial, the trial judge referred to 17 Am. Jur.2d, *Contracts*, Section 26, in support of his conclusion that the instruction was correct. Walker also refers to the same authority for his contention that the instruction was erroneous. That section reads, in part, as follows:

"A contract is not necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement. An agreement to agree to do a certain specified thing, all the conditions and terms of the postponed agreement being specified, is simply an agreement in praesenti to do it. A contract between two persons, upon a valid consideration that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubtedly binding, and upon a breach thereof the party having the election or option may recover as damages what such particular contract to be entered into would have been worth to him, if made. However, unless an agreement to make a future contract is definite and certain upon all the subjects to be embraced, it is nugatory. To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. If any essential term is left open for future consideration, there is no binding contract, and an agreement to reach an agreement imposes no obligation on the parties thereto."

■ If we were to take out of context the sentence in the instructions Walker complains of, we might agree with Walker, i.e., the parties can agree to agree in the future *if* no *essential* terms are left open for future consideration. However, in the total context of the paragraph of the instruction in which the sentence is used, it is apparent that the trial judge is referring to the requirement that the *essential* terms be specified before an agreement to agree in the future creates a binding agreement, and we believe the instruction is a correct statement of the law. An agreement to agree in the future which is not sufficiently definite to enable a court to give it an exact meaning is not an enforceable obligation. *Deadwood Lodge No. 508, Etc. v. Albert,* 319 N.W.2d 823 (S.D.1982). *But see Drees Farming Assn. v. Thompson,* 246 N.W.2d 883 (N.D.1976).

■ We, of course, review instructions as a whole rather than individual instructions or portions of instructions. See, e.g., *Wasem v. Laskowski,* 274 N.W.2d 219 (N.D.1979). If, when so considered, they correctly advise the jury as to the law, they are sufficient although parts of them

standing alone may be erroneous or insufficient. See, e.g., *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819 (N.D. 1980). If the effect of an instruction is to outline the essential issues fairly and properly, an isolated improper statement will not be considered prejudicial error. See, e.g., *Gajewski v. Bratcher*, 307 N.W.2d 826 (N.D.1981).

For the reasons stated herein, the judgment and the order denying the motion for new trial are affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.