**WILLIAMS COUNTY SOCIAL SERVICES BOARD, and Jonathan Eugene Nice, through Michon Sax as Guardian Ad Litem, and Paula Nice, Petitioners and Appellees,**

v.

**Bobby J. FALCON, Respondent and Appellant.**

**Civ. No. 10732.**

Supreme Court of North Dakota.

April 24, 1985.

Anseth & Zander, Williston, for petitioners and appellees; argued by Janet Holter Zander, Williston.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for respondent and appellant; argued by William E. McKechnie, Williston.

GIERKE, Justice.

Bobby J. Falcon [Falcon] appealed from a district court judgment entered upon a jury verdict in a disputed paternity action. We affirm.

Jonathan Nice [Jonathan] was born out of wedlock to Paula Nice [Paula] on November 19, 1975. In 1975, Paula applied for and received public assistance on behalf of Jonathan and executed an assignment of rights of support to the North Dakota Social Service Board and the Williams County Social Service Board [Board], naming Falcon as the father. On May 26, 1983, the Board and Jonathan, through his guardian ad litem, Michon Sax, commenced a paternity action against Falcon alleging that he was the biological father of Jonathan and seeking to recover $19,762.36 in public assistance payments made by the Board to Paula from June 1975 to January 1980 for Jonathan's benefit. Paula was joined as a necessary party before trial. Unless otherwise indicated, the Board, Jonathan, and Paula are hereinafter collectively referred to as petitioners.

The petitioners' case was based on Paula's testimony that she had had sexual relations with Falcon on February 28, 1975, at a party in Williston, and on blood tests that indicated a 94.5% likelihood of Falcon's paternity.

Falcon denied that he had ever had sexual relations with Paula and contended that he was visiting friends in Wakita, Oklahoma, on February 28, 1975. Falcon produced three witnesses who testified that they were with Falcon in Oklahoma on February 28, 1975. Falcon also disputed the statistical findings of the blood test regarding the likelihood of paternity. Falcon also contended that the equitable doctrine of laches barred the petitioners' action.

The parties stipulated that Paula had received $19,762.36 from the Board for the care and support of Jonathan. The jury returned a special verdict finding that Falcon had had sexual relations with Paula, and that he was the father of Jonathan. Judgment was entered accordingly, and Falcon appealed.

## I

Falcon contends that the equitable doctrine of laches bars the petitioners' action because the Board waited seven years after being informed that Falcon was the alleged father of Jonathan before commencing this action. Falcon contends that the passage of time has created a severe hardship on his ability to obtain objective evidence to establish that he was in Oklahoma on February 28, 1975. Falcon also asserts that, because he is currently married and has two children, there has been a material change in his circumstances which necessitates the application of the doctrine of laches.

Initially, we note that Michon Sax brought this action as guardian ad litem on behalf of Jonathan under the provisions of the Uniform Parentage Act (Ch. 14–17, NDCC). Section 14–17–06, NDCC, is identical to Section 7 of the Uniform Parentage Act and provides that an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches majority.[1] In *Throndset v. J.R.*, 302 N.W.2d 769 (N.D.1981), we stated that Section 14–07–06, NDCC, did not bar a paternity action in which the Social Service Board was a party if the child was also a named party to the action. We also stated that once paternity is determined, the time limitation of Section 14–17–06, NDCC, did not bar the Social Service Board from recovery in the same action for amounts expended for the care and maintenance of the child. See Section 14–17–16(1) and Chapter 14–08.1, NDCC.

Falcon argues that even though this action was brought within the applicable statute of limitations, the Board should not share the same statute of limitations as Jonathan and its action should be barred by laches. Falcon also argues that the Board should not be permitted to recover a money judgment against him because of the delay.[2] However, we must examine Falcon's arguments within the procedural context in which they were raised in the lower court.

Before trial, Falcon moved for summary judgment based upon laches. Counsel stipulated that Jonathan was born on November 19, 1975; that Paula executed an acknowledgment of assignment of rights in 1975 wherein she stated that Falcon was Jonathan's father; and that the paternity

---

1. The Commissioner's Comment to the corresponding section of the Uniform Parentage Act recognizes that the section, in effect, provides for a twenty-one year statute of limitations and that the extended statute of limitations may cause problems of proof. The Comment points out that the state legislatures may wish to consider an earlier draft that provided that an action to determine the existence of the father-child relationship must be brought promptly on behalf of the child by the appropriate state agency.

2. Under Section 14–17–14(4), NDCC, after paternity is determined the court may limit the father's liability for past support of the child to the portion of the expenses already incurred that the court deems just. Falcon stipulated to the amount expended by the Board on behalf of Jonathan and did not raise an issue relating to limiting the expenses incurred.

action against Falcon was commenced on May 26, 1983. Additionally, Falcon submitted affidavits of a private investigator, his attorney, and himself which, in substance, stated that the passage of time had caused a material change in his condition and created a severe hardship on his ability to locate witnesses and to obtain hotel or motel receipts documenting his trip to Oklahoma. The trial court denied Falcon's motion for summary judgment.

■■■ Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if only a question of law is involved. *Herman v. Magnuson*, 277 N.W.2d 445, 454 (N.D. 1979). If different factual inferences may be drawn, they must be drawn in favor of the party opposing summary judgment. *Sigurdson v. Lahr & Lahr, Inc.*, 299 N.W.2d 792 (N.D.1980).

■■■ Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay. *Grandin v. Gardiner*, 63 N.W.2d 128 (N.D.1954). However, the mere delay or lapse of time in commencing an action does not of itself constitute laches. *Burlington Northern, Inc. v. Hall*, 322 N.W.2d 233 (N.D.1982); *Strom v. Giske*, 68 N.W.2d 838 (N.D.1954). Whether or not laches bars a claim must be determined by examining the underlying facts and circumstances of each particular case. *Burlington Northern, Inc. v. Hall, supra; Strom v. Giske, supra.* In *Strom v. Giske*, 68 N.W.2d at 845, we said that "laches is a question of fact and each case must stand or fall on its own facts and circumstances." See 27 Am.Jur.2d, Equity, § 176 [whether the elements of laches have been established in any particular case is a question of fact and whether, in view of the established facts, it would be unjust to the defendant to enforce the claim is a question of law].

■■■ Falcon asserts that the undisputed facts establish that he was unduly prejudiced by the delay of the Board in not asserting its claim at an earlier date. The length of delay in commencing the action, Falcon's inability to obtain motel receipts, and his subsequent marriage were not disputed. However, prejudice that may be inferred from those facts required that all the facts and circumstances be evaluated by the trier of fact. Furthermore, the reason for the delay [3] as well as the availability of witnesses must be considered along with all the other facts and circumstances of the case. Because the availability of laches as a defense depends on the facts and circumstances of each case, we believe the trial court properly denied Falcon's motion for summary judgment.

■■■ The record reflects that no instructions on laches were requested by the parties or given to the jury. Two factual issues were answered by the jury in its special verdict form; however, the issue of laches was not specifically addressed in the

---

3. The Administrator of the Child Support Enforcement Unit, Barbara Johnson, testified as follows at the pretrial hearing held pursuant to Section 14–17–09, NDCC:

"Q. Mrs. Johnson, do you have any reason why or does the State, since you're representing the State in this thing, reason why they waited until 1982, excuse me, 1983 to commence an action against Mr. Falcon?
"A. My only response to that is that when I was hired as the administrator in December of 1980, we started working our open AFDC cases at that time. Once I got all of those cases in compliance, I started working the closed cases and that's when we started working this one."

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

"Q. Can you tell the Court what you mean by a 'closed' case?
"A. It's a closed AFDC case. Paula Nice is not receiving AFDC right now. Closed case, not closed as far as our actions to child support.
"Q. I understand.
"A. Prior to the time that I started working the cases, it was handled by an attorney out of Dickinson and why he didn't take action on it, I can't explain.
"Q. I see. So you have no explanation, really, for a basically six-year delay?
"A. No, I don't. I can't explain someone else's actions."

special verdict form. Rule 49(a), NDRCivP, provides, in part, that if the court:

"omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

The record does not reflect that any party demanded that the issue of laches be submitted to the jury or that the court made a finding as to the underlying factual circumstances concerning laches. Consequently, we conclude that a finding in accord with the judgment is deemed to have been made on the underlying factual circumstances concerning laches.

We do not believe the facts and circumstances of this case, as developed at trial, require application of the doctrine of laches.

The Minnesota Supreme Court was faced with a factually similar case in *M.A.D. v. P.R.*, 277 N.W.2d 27 (Minn.1979). In that case, a child was born in 1961. The mother informed the county welfare department of the name of the alleged father in 1963 when she asked for assistance. The mother commenced the action in 1976 when requested by the county welfare department. The record was silent on why the county did not proceed more promptly. In the interim, the alleged father married and had two children. In 1972, he sustained serious injuries in an automobile accident and had difficulty with his memory. At trial, he testified that he did not believe he was the father but could not remember why.

The Minnesota Supreme Court held that the doctrine of laches was not available as a defense because the matter had been resolved by an express statutory provision. The court also said, however, that even if laches were available, given the facts of that case, the equities of the father would not exceed those of the child, who was the ultimate beneficiary.

Our research has not revealed a case, nor has any been called to our attention, in which an alleged father has successfully raised laches as a defense to a paternity action. Our research has revealed several cases in which an alleged father did not prevail on a claim of laches in a paternity action. See *Perez v. Singh*, 21 Cal.App.3d 870, 97 Cal.Rptr. 920 (Cal.Ct.App.1971); *Cartee v. Carswell*, 425 So.2d 204 (Fla.Dist. Ct.App.1983); *Howell v. Brummell*, 293 Md. 646, 446 A.2d 1149 (1982); *McNulty v. Heitman*, 600 S.W.2d 168 (Mo.Ct.App. 1980); *M.A.D. v. P.R., supra; State ex rel. Dept. of Human Services v. Davis*, 99 N.M. 138, 654 P.2d 1038 (1982); *Prejean v. Prejean*, 592 S.W.2d 660 (Tex.Civ.App. 1979); *Zito v. Butler*, 584 P.2d 868 (Utah 1978); *Nettles v. Beckley*, 32 Wash.App. 606, 648 P.2d 508 (1982).

This Court has recognized the important public and social policy involved in determining a child's biological parents. See *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D.1982); *Throndset v. J.R.*, 302 N.W.2d 769 (N.D.1981). Although the Board is a party to the action, Jonathan's interest in the determination of his father is of primary concern and, in this respect, he is the ultimate beneficiary of the action. We do not believe that Falcon has demonstrated that he has any greater equities than the petitioners. Furthermore, we believe that accepting Falcon's argument that the Board should not share the same statute of limitations as Jonathan, could lead to absurd and inconsistent results in matters involving paternity determinations. Because of the important public and social policy considerations involved in paternity cases, a paternity determination should not hinge on whether or not the social service board is a party to the action.

II

Falcon contends that the trial court erred in permitting the jury to view a foundational videotape entitled "Blood Testing Testi-

mony for Use in Paternity Trials" which was developed by the National Institute for Child Support Enforcement.

The foundational videotape consisted of a presentation by Dr. Herbert F. Polesky, Director of the Minneapolis War Memorial Blood Bank, describing his qualifications, experience, and training. In it Dr. Polesky also explained the procedure used when a blood test is processed at the War Memorial Blood Bank, the battery of tests used in paternity testing, and the meaning of the paternity index and the likelihood of paternity. Part of the foundational videotape showed Dr. Polesky's presentation in a courtroom setting and part of the videotape showed scenes from the War Memorial Blood Bank depicting how portions of the blood test were conducted. Dr. Polesky's presentation on the foundational videotape was not in a real trial, but was a "mock or demonstration-type" trial. Dr. Polesky was sworn at the beginning of the foundational videotape.

Before trial, the petitioners made a motion to take an audio-visual deposition of Dr. Polesky pursuant to Rule 30.1, NDRCivP, and to use the foundational videotape as part of that audio-visual deposition. The motion was granted. Counsel for Falcon had an opportunity to observe the foundational videotape before the audio-video deposition was taken and had the opportunity to cross-examine Dr. Polesky on all areas of the audio-video deposition, including the foundational videotape.

Before trial, Falcon made a motion in limine to prevent the jury from viewing the foundational videotape. Falcon asserted that the foundational videotape violated Rules 402, 403, 603, and 901, NDREv. At trial, the petitioners presented the testimony of Dr. Polesky through the audio-visual deposition. The jury viewed the foundational videotape before it viewed the audio-visual deposition. Falcon objected to the viewing of the foundational videotape on the basis of Rule 403, NDREv.

Falcon contends that the trial court admitted the foundational videotape without a proper foundation and that no "real" oath

as required by Rule 603, NDREv, was taken by Dr. Polesky or any other participant in the foundational videotape.

Rule 603, NDREv, requires that, before testifying, every witness declare that he will testify truthfully by oath or affirmation. Although Dr. Polesky's presentation on the foundational videotape was not at a "real" trial, we believe the oath he took was sufficient to "awaken his conscience and impress his mind" [Rule 603, NDREv] with the duty to truthfully state the information about the blood testing. Furthermore, the foundational videotape must be viewed in conjunction with the audio-visual deposition. Dr. Polesky was under oath during the audio-visual deposition and Falcon had the opportunity to cross-examine him concerning the foundational videotape.

■ Dr. Polesky testified during the course of the audio-visual deposition that the foundational videotape accurately reflected the current operating procedures used in blood testing at the War Memorial Blood Bank. Dr. Polesky further testified that paternity testing of the general type done in the foundational videotape was done in this case. We believe the testimony of Dr. Polesky in the audio-visual deposition, coupled with the opportunity for cross-examination, was sufficient foundation.

■ Falcon also contends that the foundational videotape violated the hearsay rule. The record before us reflects that Falcon's motion in limine to prevent the jury from viewing the foundational videotape was based on Rules 402, 403, 603, and 901, NDREv, and that his objection at trial to the foundational videotape was based on Rule 403, NDREv. It is well settled that one of the guidelines for an appeal on any issue or contention is that the issue on appeal was adequately raised in the lower court. *State v. Helgeson*, 303 N.W.2d 342 (N.D.1981). Because Falcon did not raise this issue in lower court, he is precluded from raising the issue on appeal.

Falcon contends that the jury should not have been permitted to view the founda-

tional videotape because the results of the blood tests had already been stipulated into evidence, and therefore the foundational videotape was repetitious, cumulative, and prejudicial and should have been excluded under Rules 402 and 403, NDREv. Falcon asserts that the only purpose served by showing the foundational videotape was to mislead the jury into thinking about the scientific tests that did not exclude him as the father of Jonathan.

Pursuant to Rule 401, NDREv, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence. The Explanatory Note to Rule 401, NDREv, quotes as follows from the Advisory Committee's Note to Rule 401, FREv:

" 'While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute. Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.' "

 The foundational videotape explained the procedures used in blood testing and the meaning of the results. Because Falcon contested the statistical results of the blood test regarding the likelihood of paternity, the information in the foundational videotape was probative and relevant to explaining the meaning of the results.

 Pursuant to Rule 403, NDREv, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. Rule 403, NDREv, vests wide discretion in the trial court to control the introduction of evidence at trial to prevent the introduction of cumulative evidence. *State v. Skjonsby*, 319 N.W.2d 764 (N.D. 1982), *Smith v. American Family Mutual Insurance Co.*, 294 N.W.2d 751 (N.D.1980). See *Jones v. Boeing Company*, 153 N.W.2d 897 (N.D.1967). Our review is limited to whether or not the trial court abused its discretion. *State v. Buckley*, 325 N.W.2d 169 (N.D.1982). We do not believe the trial court abused it discretion in permitting the jury to view the foundational videotape.

Falcon made a motion for a new trial based upon this Court's recent decision in *In Interest of Gust*, 345 N.W.2d 42 (N.D. 1984). The trial court denied Falcon's motion. In *Gust*, this Court interpreted the "orally and in open court" language of Rule 43(a), NDRCivP, and held that a witness may not testify at trial by telephone rather than by personal appearance.

Falcon contends that the foundational videotape violates the "orally and in open court" language of Rule 43(a), NDRCivP. However, Falcon's argument overlooks the language of Rule 43(a), NDRCivP, which provides as follows:

"In all trials the testimony of witnesses shall be taken orally in open court, *unless otherwise provided by statute or these rules. All evidence shall be admitted which is admissible under the statutes of this State, the North Dakota Rules of Evidence, or other Rules adopted by the North Dakota Supreme Court.*" [Emphasis added.]

 Because the foundational videotape was admissible under the Rules of Evidence, we do not believe that this Court's decision in *Gust* is applicable to this case, and we do not believe the trial court abused its discretion in denying Falcon's motion for a new trial.

### III

Falcon contends that the trial court erred in not allowing him to attack Paula's credibility by fully cross-examining her about her abuse of mind-altering and illegal drugs. At trial, Falcon attempted to cross-

examine Paula about her use of drugs from 1975 until the present. The trial court limited cross-examination on that issue to the time period between the party on February 28, 1975, and the assignment of rights to the Board in November 1975.

The trial court ruled that the evidence was not admissible under Rule 403, NDREv. As we have previously noted, Rule 403, NDREv, gives the trial court wide discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of prejudice. The scope of cross-examination allowed for impeachment purposes is within the trial court's discretion. *State v. Buckley*, 325 N.W.2d 169 (N.D.1982). Evidence sought to be introduced through cross-examination must be relevant to be admissible. Rule 402, NDREv. We do not believe the trial court abused its discretion in limiting the scope of cross-examination of Paula concerning her use of drugs to the time period from conception until the assignment of rights to the Board in November.

## IV

Falcon also contends that the trial court improperly interjected itself into the trial when it made comments about the testimony of Robert White during trial. According to Paula's testimony, White was present at the party on February 28, 1975. At trial, the petitioners called White to the stand. White's testimony concerning the party was inconclusive. On one occasion, White testified that he did not think he was at the party and on another occasion, he testified that he could not recall if he was at the party. After White testified that he may have been at the party but could not recall for sure, the court made the following comment:

"I have one caution to—to announce to the witness that perjury under our law is a class C felony, punishable by five years and—and/or $5,000 fine. So, if you do remember, you should tell us yes or no. If you don't remember, that's fine. But I'm just warning you that perjury is a serious crime."

After counsel objected to the court's comment, the court made the following comment to the jury:

"The counsel has objected to my admonition to the witness. What I said to him applies to all the witnesses that when they swear to tell the truth, they do so under the rules of perjury and which is punishable by—punishable by $5,000 fine and/or five years in the State Penitentiary. So it's important that the witnesses know that, and I admonished Mr. White because it appeared he was called by the Plaintiff and suddenly he didn't know anything, which is unusual. So, apparently, he—he hasn't been talked to ahead of time by counsel, so maybe he doesn't remember. That's fine. That's his testimony. But I'm just admonishing him that he should be careful.

"That applies to all the other witnesses, too. These kind of cases, I understand, are difficult to try and to get the truth out because they're kind of personal in nature and whatever, and they're difficult. But we want the truth and that's the purpose of a trial is to bring out the truth of the matter. And I don't believe that I've overstepped my bounds. That's—that's for counsel to—to appeal on if he wishes to. Are you through with this witness?"

The trial court has wide latitude and discretion in the conduct of a trial. *Bergquist-Walker Real Estate, Inc. v. Clairmont, Inc.*, 353 N.W.2d 766 (N.D. 1984); *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692 (N.D.1966).

The admonition apprised the jury that all witnesses were subject to penalties for perjury. We have reviewed all of White's testimony, and we do not believe that the trial court abused its discretion.

For the reasons stated herein, the judgment of the district court is affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, NDCC.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time the case was submitted.