**Corrected Opinion Filed 08/15/24 by Clerk of the Supreme Court**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 161

Burleigh County Social Service
Board as assignee for Heather Odden,
n/k/a Heather Zins,                                    Plaintiff and Appellee

v.

Mark Rath,                                             Defendant and Appellant

## No. 20230411

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Jackson J. Lofgren, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Sheila K. Keller, Special Assistant Attorney General, Bismarck, ND, for plaintiff and appellee; on brief.

Mark Rath, self-represented, Bismarck, ND, defendant and appellant; on brief.

**Jensen, Chief Justice.**

[¶1]   Mark Rath appeals from a district court's order adopting the findings of a judicial referee regarding Rath's child support obligation. On appeal, Rath argues that the district court violated his right to counsel and erred in its calculations of the accrual of child support, that the defense of laches and third-party standing prevents the enforcement of his child support obligations, and that the Federal Consumer Credit Protection Act prevents the State from collecting more than fifty percent of his income. We affirm.

I

[¶2]   Rath and Heather Zins were never married but share one child together, A.J.O., born in 2004. Zins was awarded primary residential responsibility of A.J.O., and Rath was ordered to pay child support. A.J.O. turned 18 in November of 2022, which was the last month child support accrued. Rath did not fully pay his child support as it became due and had arrears at the time his duty to pay ongoing support ended.

[¶3]   On October 10, 2023, Rath was served with an order requiring him to appear to show cause as to why he should not be found in civil contempt for failure to pay his child support obligation. Following an evidentiary hearing, before a judicial referee, Rath was found in contempt of court. He was ordered to make monthly support payments of $439.20 towards his arrears. Rath was also informed that he was receiving a suspended twenty-day sentence of incarceration, that the suspended period of incarceration was not subject to any conditions that would trigger actual imposition, and that prior to any imposition of the sentence of incarceration, he was entitled to have a full hearing.

[¶4]   Rath sought a review by the district court of the findings by the judicial referee. After reviewing the parties' fourth amended judgment, listening to the audio recording of the contempt hearing held on November 8, 2023, and reviewing the child support ledger, the district court adopted the findings of the judicial referee. This appeal followed.

## II

[¶5] This Court reviews the findings under a clearly erroneous standard. "When it is a review on the record, the district court reviews the judicial referee's findings of fact under the clearly erroneous standard. Conclusions of law are fully reviewable." *Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D. 1995) (cleaned up).

## III

[¶6] Rath requested a continuance of the contempt hearing to find legal representation, arguing the judicial referee could impose sanctions affecting his property interests. The judicial referee denied the request. The abuse of discretion standard applies when reviewing a court's denial of a continuance. *See State v. Ripley*, 2009 ND 105, ¶ 12, 766 N.W.2d 465. "A district court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *State v. Carlson*, 2016 ND 130, ¶ 6, 881 N.W.2d 649 (quoting *State v. Hammer*, 2010 ND 152, ¶ 26, 787 N.W.2d 716).

[¶7] Rath argues his Sixth Amendment right to counsel was violated, given the imposition of a jail sentence. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

The Sixth Amendment grants an indigent defendant the right to state-appointed counsel in a criminal case. See *Gideon v. Wainwright*, 372 U.S. 335 (1963).

[¶8] In adopting the findings of the judicial referee, the district court made the following conclusions:

In *Turner v. Rogers*, 564 U.S. 431, 441, 131 S. Ct. 2507 (2011) the United States Supreme Court specified "...the Sixth Amendment does not govern civil cases." Any right to counsel in a civil proceeding stems from the Fourteenth Amendment's Due Process Clause. *Turner*, 564 U.S. 431 at 441. In *Turner*, the Supreme Court considered whether the Due Process Clause requires the appointment of counsel in a civil contempt proceeding for non-payment of child support. The Supreme Court recognized the child support obligor's interest in the "...loss of personal liberty through imprisonment." *Id*. at 445. Nevertheless, "...the Due Process Clause does not always require the provision of counsel in civil proceedings where incarceration is threatened." *Id*. at 446.

In reaching its decision, the Supreme Court stated "in determining whether the Clause requires a right to counsel... we must take account of opposing interests, as well as consider the probable value of 'additional or substitute procedural safeguards.'" *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893 (1976)). Considerations against appointing counsel included the critical question likely at issue being the obligor's ability to pay, the person pursuing the matter being the unrepresented other parent, and the availability of substitute procedural safeguards. *Id*. at 446-448. "Those safeguards include (1) notice to the defendant that his 'ability to pay' is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status (*e.g.*, those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay." *Id*. at 447- 448.

. . . .

Here, early in the contempt hearing counsel for the State indicated it would not be requesting jail time. Referee Hammes addressed Mr. Rath and indicated he was not going to issue any liens or levies. He stated the only issue for the hearing was whether Mr. Rath had paid child support as ordered, and if not, he would impose penalties. While Referee Hammes did order a 20-day jail sentence it was all suspended. He did not condition the suspension on the performance of any condition and did not authorize a Warrant of Attachment. The 20-day sentence could not be imposed. Mr. Rath was ordered to pay child support in an amount consistent with the *Fourth Amended Judgment* which was already required. Referee Hammes noted that if Mr. Rath did not

pay his child support as ordered another hearing would be required before any jail time could be imposed. Under the circumstances, Mr. Rath's liberty was not at stake during the contempt hearing.

The Court would also note the procedural safeguards identified in *Turner* were largely followed. The *Order to Show* expressly stated "WITH REGARD TO CHILD SUPPORT, YOUR ABILITY TO PAY YOUR OBILGATION CONSTITUTES THE CRITICAL QUESTION IN A CONTEMPT ACTION." There was no form used to elicit relevant financial information but Mr. Rath was asked standard routine questions about his financial situation and income during the hearing. He had the opportunity to respond to these questions and was offered the chance to provide statements and evidence. While the *Order* did not include an express finding that Mr. Rath had the ability to pay, Referee Hammes heard testimony from Mr. Rath regarding his financial situation prior to making his findings. Before closing the record Referee Hammes asked Mr. Rath if he had the ability to make the ordered payment. The procedural safeguards identified in *Turner* were met.

Based on the record in this matter the Court finds Mr. Rath was not entitled to appointed counsel at the contempt hearing held on November 8, 2023.

[¶9] Rath cites *Peters-Riemers v. Riemers*, 2003 ND 96, 663 N.W.2d 657, in support of his positon. Rath's case is distinguishable from *Reimers*. In *Reimers*, the district court ordered:

6. *Sentence:* By no later than the end of business, March 28, 2003, Roland shall pay the sum of $23,465.84 to the *State Disbursement Unit, PO Box 7280, Bismarck, ND 58507–7280*. Should he fail to make such payment, upon Jenese's request and the Court's verification with the State Disbursement Unit's computer system that the payment has not been made, a Writ of Attachment shall issue for Roland's arrest and confinement. Roland shall then serve thirty (30) days in the Traill County jail. Roland may obtain his

4

> unconditional release from such confinement at any time upon his full payment of the $23,465.84.

*Id*. at ¶ 10.

[¶10] Roland Reimers was ordered to report to jail on a certain date if he did not take certain actions. No additional hearing was going to be held if he did not take the actions ordered, and there would be no opportunity for the appointment of counsel to assist him. Under those circumstances, this Court concluded that because Reimers was not informed of his right to counsel during either of the contempt proceedings, we reversed the contempt order, the warrant of attachment, and the money judgment and remanded to the trial court. *Riemers*, 2003 ND 96, ¶ 25.

[¶11] Unlike *Reimers*, Rath was not ordered to report to jail on a date-certain. No warrant of attachment was issued. While suspended jail time was ordered, the judicial referee informed Rath that he would not be required to serve any of that time without first having a hearing, at which time he would be informed of his right to counsel. As noted by the United States Supreme Court, "...the Due Process Clause does not always require the provision of counsel in civil proceedings where incarceration is threatened." *Turner,* 564 U.S. at 446. The United States Supreme Court noted, "in determining whether the Clause requires a right to counsel... we must take account of opposing interests, as well as consider the probable value of 'additional or substitute procedural safeguards.'" *Id*.

[¶12] While the judicial referee "threatened" a specific amount of suspended jail time in the order for contempt, actual imposition of the jail time was effectively unresolved. The jail time was not subject to any conditions that could automatically trigger its imposition, and prior to imposition of the jail time, Rath was informed he would be entitled to a full hearing at which time he would have the right to counsel. We conclude, under the circumstances of this case, while it would have been a better practice for the order to have remained silent on threatened potential future penalty, Rath's right to counsel was adequately protected by the judicial referee's inclusion of procedural safeguards, including notice to Rath that before any period of incarceration could be imposed, he would have a right to a full hearing.

5

[¶13] Based on a review of the record, the district court did not act in an arbitrary, unreasonable, or unconscionable manner, or misinterpret or misapply the law. We conclude the court did not abuse its discretion in denying Rath's motion for continuance.

IV

[¶14] Rath challenges whether his child support properly accrued. Specifically, he argues that because the division of juvenile services had temporary custody of the minor child, he no longer had a duty to pay his child support obligation. Rath also contends he should be relieved of his duty to pay arrears because he questions how the obligee will spend the child support money.

[¶15] We conclude that even if the division of juvenile services has temporary custody of a minor, the child support obligor still owes child support. This is analogous to the legal duty to support a child even when a child is placed in foster care. *In re T.H.*, 2003 ND 34, 657 N.W.2d 273. Parents still have an obligation to support their children even when they are not in the parent's custody. *In Int. of K.G.*, 551 N.W.2d 554 (N.D. 1996). The district court used general child support guidelines to determine the support obligation of a parent whose child was in foster care, indicating a broader application of child support guidelines irrespective of the child's living arrangement. *Id.* The fundamental obligation to provide child support continues regardless of who has temporary custody of the child, including when a governmental agency such as the division of juvenile services has custody.

[¶16] Additionally, Rath has provided no persuasive authority that he has a right to an accounting of how the obligee spends child support payments. His argument lacks merit.

[¶17] The district court's findings ordering monthly payments towards Rath's arrears were not induced by an erroneous view of the law, evidence exists to support the findings, and, on the entire record, this Court is not left with a definite and firm conviction a mistake was made.

[¶18] Rath argues that enforcement of his child support arrears is barred by the doctrine of laches because the obligee's six-year delay in enforcing the child support was unjustified.

[¶19] In *Stenehjem, ex rel. State v. Nat'l Audubon Soc'y, Inc.*, 2014 ND 71, ¶ 12, 844 N.W.2d 892, this Court discussed the equitable defense of laches:

> A "stale claim" may be barred by the equitable defense of laches. *Sall v. Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Johnson v. State*, 2006 ND 122, ¶ 8, 714 N.W.2d 832. "[L]aches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to another." *Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state." *Bakken v. Duchscher*, 2013 ND 33, ¶ 19, 827 N.W.2d 17. "The party invoking laches has the burden of proving he was prejudiced because his position has become so changed during the delay that he cannot be restored to the status quo." *Id.*

[¶20] Although we have never affirmatively concluded whether or not laches can be invoked against the State, this Court has discussed and rejected substantive arguments for laches that were made against social service boards in recoupment actions. In *Williams Cnty. Soc. Servs. Bd. v. Falcon,* 367 N.W.2d 170 (N.D. 1985), the Williams County Social Services Board commenced a paternity action against Falcon, seeking to recover public assistance payments made to benefit his alleged child. Falcon argued he was unduly prejudiced in the delay of the board in asserting its claim. *Id.* at 174. The child was born in 1975, and the action commenced in 1983. *Id.* at 173-74. This Court concluded, "[w]e do not believe the facts and circumstances of this case, as developed at trial, require application of the doctrine of laches." *Id.* at 175. Similarly, in *Interest of K.E.N.,* 513 N.W.2d 892, 898 (N.D. 1994), we concluded, on substantive grounds, that the Stutsman County Social Services Board was not

barred by laches from seeking to recoup child support and AFDC benefits paid to the child's mother. Less than two years had elapsed from the time the child's mother assigned her right to child support to Stutsman County Social Services and the commencement of the recoupment suit. *Id.* Given those facts, we stated "this is not the type of undue prejudice from delay that requires application of the doctrine of laches." *Id.*

[¶21] We conclude today that the doctrine of laches does not apply to child support arrearages. Child support arrearages are money judgments. *Darling v. Gosselin*, 1999 ND 8, ¶ 7, 589 N.W.2d 192; *see Baranyk v. McDowell*, 442 N.W.2d 423, 425-26 (N.D. 1989). The right to the payment of child support becomes vested as it becomes due, and a child support order is essentially a judgment in monthly installments. Furthermore, the right to child support belongs to the child, not the parent who has a representational right to collect support on behalf of the child. *State, Cnty. of Cass, ex rel. Schlect v. Wolff*, 2011 ND 164, ¶ 29, 801 N.W.2d 694. A parent cannot waive her child's right to child support. N.D.C.C. § 14-09-09.32(1) ("An agreement purporting to relieve an obligor of any current or future duty of child support is void and may not be enforced. An agreement purporting to waive past-due child support is void and may not be enforced unless the child support obligee and any assignee of the obligee have consented to the agreement in writing and the agreement has been approved by a court of competent jurisdiction.").

[¶22] Rath has also failed to show how he was disadvantaged or prejudiced by the delay in enforcement of child support and seeking payment towards the arrears. Rath was aware of the continued accrual of the child support obligation. Rath failed to satisfy his burden of demonstrating how any delay in enforcement led to prejudice or disadvantage to him.

VI

[¶23] Rath argues that because the minor has reached the age of majority, the State and the obligee lack standing to assert a claim for child support arrears.

[¶24] This Court has interpreted N.D.C.C. § 14-08.1-05 holding "due and unpaid child support payment becomes a judgment as a matter of law." *Darling*, 1999 ND 8, ¶ 7; *see Baranyk*, 442 N.W.2d at 425-26. A "court may

8

issue orders for child support arrearages if there is no current monthly child support obligation." *State v. Nastrom*, 2008 ND 110, ¶ 9, 750 N.W.2d 432; *see* N.D.C.C. § 14-09-09.30(2); *see Walberg v. Walberg*, 2008 ND 92, ¶ 12, 748 N.W.2d 702 (holding after a change in custody eliminated a father's "current monthly support obligation," he had "no current monthly support obligation" within the meaning of N.D.C.C. § 14-09-09.30(2), and the court had authority to order a monthly support obligation under N.D.C.C. § 14-09-09.30(2)(a),(b), or (c) as repayment for his arrearage). A "parent may sue for past-due child support even after her children have reached majority and are no longer entitled to demand any support from their parents." *Matter of Hosier*, 875 F.2d 128, 129 (7th Cir. 1989).

[¶25] Rath's argument negates the idea that the payment of past due support was intended to support the child at the point it was due. As the State correctly indicated in its brief, a failure to pay child support upon its due date results in the custodial parent who is required to provide for the child having to incur additional expenses that would normally be offset by a payment of child support. As this demand is for past-due support which the obligee was entitled to when it was due, she would have standing to enforce the payment of such a debt. Where a child has been supported during his or her minority by a single parent, any right of action for reimbursement from the noncontributing parent after the child attains majority belongs to the parent who provided that support and not to the child. *Stapel v. Stapel,* 4 Kan.App.2d 19, 601 P.2d 1176, 1178 (1979) (citations omitted).

[¶26] We conclude that the State and Zins have standing to sue for arrearages accrued during A.J.O.'s minority.

VII

[¶27] Rath asserts the Federal Consumer Credit Protection Act (FCCPA), 15 U.S.C. Chapter 41, prevents the State from ordering him to pay more than the limits set out in the Act, arguing 15 U.S.C. § 1673(b)(2)(a) and (b) limit the garnishment to fifty and sixty percent of his disposable earnings for a week.

[¶28] The FCCPA does not specifically address child support arrears. The FCCPA primarily aims to ensure fair and honest credit practices, protecting

consumers from abusive and deceptive practices related to consumer credit. It includes provisions on credit disclosure, credit billing, and debt collection practices among others. In contrast, child support arrears are typically governed by state laws.

[¶29] Moreover, 15 U.S.C. § 1673(b)(1) states:

> The restrictions of subsection (a) do not apply in the case of (A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

[¶30] As Rath's child support obligation is set by a court of competent jurisdiction and which has been established by State law, the FCCPA does not apply.

## VIII

[¶31] The district court did not violate Rath's right to counsel and did not err in its calculations of the accrual of child support. We conclude the doctrine of laches does not apply to child support arrearages, a child support obligation continues to accrue even when the division of juvenile services has temporary custody of a minor, the State and obligee have standing to assert a claim for child support arrearages for a child who has reached the age of majority, and the Federal Consumer Credit Protection Act does not apply to child support. We affirm.

[¶32] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Michael P. Hurly, D.J.

[¶33] The Honorable Michael P. Hurly, D.J., sitting in place of Bahr, J., disqualified.