2010 ND 91

**Wayne STENEHJEM, Attorney General, ex rel., STATE of North Dakota, Petitioner and Appellant**

v.

**CROSSLANDS, INC., Respondent and Appellee.**

No. 20090199.

Supreme Court of North Dakota.

May 13, 2010.

Charles M. Carvell, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for petitioner and appellant.

C. Nicholas Vogel, Fargo, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Wayne Stenehjem, as Attorney General on behalf of the State of North Dakota, appealed from a district court judgment ordering Crosslands, Inc., to divest itself of certain rural land it had purchased, but allowing Crosslands to retain other rural land it had purchased. We reverse and remand for entry of judgment directing Crosslands to divest itself of the

entire 949–acre disputed tract, concluding that a purchase of land by a corporation violates the corporate farming law if the predominant use and nature of the entire tract purchased is as farmland or ranchland.

I

[¶ 2] Crosslands is a nonprofit corporation which seeks to preserve and protect migratory waterfowl habitat in North Dakota. In November 2003, Crosslands purchased 949 acres of rural land in Griggs County for the express purpose of maintaining and preserving habitat for migratory waterfowl and other wildlife. Crosslands did not seek or obtain prior approval of its acquisition of the land by the Governor under N.D.C.C. § 10–06.1–10(3), which requires such approval "[b]efore farmland or ranchland may be purchased by a nonprofit organization for the purpose of conserving natural areas and habitats for biota."

[¶ 3] The State learned of Crosslands' acquisition of the Griggs County land and notified Crosslands it considered Crosslands to be in violation of the corporate farming law, N.D.C.C. ch. 10–06.1. In July 2004, Crosslands submitted a retroactive "Acquisition Proposal" to the Natural Areas Acquisition Advisory Committee ("NAAAC"), the advisory committee authorized under N.D.C.C. § 10–06.1–10(3) to make recommendations to the Governor on proposed acquisitions of farmland and ranchland by nonprofit organizations. NAAAC held a public hearing on Crosslands' proposal and recommended that the Governor disapprove the acquisition. In September 2004, the Governor notified Crosslands that he would not approve its purchase of the property.

[¶ 4] When Crosslands did not thereafter divest its interest in the Griggs County property, the Attorney General, acting

on behalf of the State, sued Crosslands, alleging Crosslands was in violation of the corporate farming law and seeking an order requiring Crosslands to divest itself of its interest in the property. The State, while acknowledging that a small portion of the 949–acre tract contained wetlands, argued that the predominant use of the land was agricultural and the entire tract should be considered farmland. Crosslands conceded that some of the acquired land was farmland or ranchland and subject to divestiture, but argued the district court should consider the land on a piecemeal basis and not order divestiture of individual portions of the tract that were not farmland or ranchland. Specifically, Crosslands argued any wetlands, drained wetlands, and highly erodible lands should not be classified as farmland or ranchland and should not be divested. Crosslands also argued the "business purpose exception" found in N.D.C.C. § 10–06.1–07, which allows corporate ownership of farmland or ranchland "for uses supportive of or ancillary to adjacent nonagricultural land for the benefit of both land parcels," applied to nonprofit corporations and allowed Crosslands to retain agricultural property ancillary to adjacent nonagricultural lands within the 949–acre tract.

[¶ 5] The district court rejected the State's contention that the entire tract should be considered as a single unit and all treated as farmland, and instead the court engaged in a piecemeal analysis considering the use, erodibility, detailed soil analysis, topography, and agricultural profitability of small, individual portions of the tract. The court thereby determined there were 267 acres of land in the 949–acre tract which were not farmland or ranchland. The court further concluded the business purpose exception applied, and the court designated approximately 260 acres of additional land which, although constituting farmland or ranchland,

Crosslands could retain because it "constitutes acreage immediately adjacent to the non-agricultural wetlands and highly eroded lands." The court therefore ordered Crosslands to divest itself of some of the Griggs County land, but allowed it to retain land determined not to be farmland or ranchland and land falling within the business purpose exception.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 10–06.1–24(1) and 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] Restrictions on corporation ownership of farmland and ranchland in North Dakota had their genesis in an initiated measure enacted by the citizens of this state in 1932. See 1933 N.D. Sess. Laws, Initiated Measures, at 494–95. The current general prohibition is contained in N.D.C.C. § 10–06.1–02:

> All corporations and limited liability companies, except as otherwise provided in this chapter, are prohibited from owning or leasing land used for farming or ranching and from engaging in the business of farming or ranching.

"Farming or ranching" is defined broadly under N.D.C.C. § 10–06.1–01(1):

> "Farming or ranching" means cultivating land for production of agricultural crops or livestock, or the raising or producing of livestock or livestock products, poultry or poultry products, milk or dairy products, or fruit or horticultural products. It does not include production of timber or forest products, nor does it include a contract whereby a processor or distributor of farm prod-

ucts or supplies provides grain, harvesting, or other farm services.

[¶ 8]   Various exceptions to the general prohibition against corporate ownership of farmland or ranchland have been enacted by the legislature.  For example, the legislature has created an exception allowing certain nonprofit organizations to acquire farmland or ranchland for purposes of conserving natural areas and habitats for biota if prior approval is first obtained from the Governor:

A nonprofit organization may acquire farmland or ranchland only in accordance with the following:

1.   Unless it is permitted to own farmland or ranchland under section 10–06.1–09, the nonprofit organization must have been either incorporated in this state or issued a certificate of authority to do business in this state before January 1, 1985, or, before January 1, 1987, have been incorporated in this state if the nonprofit organization was created or authorized under Public Law No. 99–294 [100 Stat. 418]. . . .

2.   The land may be acquired only for the purpose of conserving natural areas and habitats for biota, and, after acquisition:

a.   The land must be maintained and managed for the purpose of conserving natural area and habitat for biota.

b.   Any agricultural use of the land is in accordance with the management of the land for conservation and agricultural use, and is by a sole proprietorship or partnership, or a corporation or limited liability company allowed to engage in farming or ranching under section 10–06.1–12.

. . . .

3.   Before farmland or ranchland may be purchased by a nonprofit organization for the purpose of conserving natural areas and habitats for biota, the governor must approve the proposed acquisition.  A nonprofit organization that desires to purchase farmland or ranchland for the purpose of conserving natural areas and habitats for biota shall first submit a proposed acquisition plan to the agriculture commissioner who shall convene an advisory committee consisting of the director of the parks and recreation department, the agriculture commissioner, the state forester, the director of the game and fish department, the president of the North Dakota farmers union, the president of the North Dakota farm bureau, the president of the North Dakota stockmen's association, and the chairman of the county commission of any county affected by the acquisition, or their designees. The advisory committee shall hold a public hearing with the board of county commissioners concerning the proposed acquisition plan and shall make recommendations to the governor within forty-five days after receipt of the proposed acquisition plan.  The governor shall approve or disapprove any proposed acquisition plan, or any part thereof, within thirty days after receipt of the recommendations from the advisory committee.

. . . .

N.D.C.C. § 10–06.1–10.

[¶ 9]   In addition, N.D.C.C. § 10–06.1–07 creates an "[i]ndustrial and business purpose exception":

A corporation or limited liability company that is not engaged in the business of farming or ranching may own or lease land used for farming or ranching when the land is necessary for residential or

commercial development; the siting of buildings, plants, facilities, industrial parks, or similar business or industrial purposes of the corporation or limited liability company; or for uses supportive of or ancillary to adjacent nonagricultural land for the benefit of both land parcels. The farmland or ranchland while not being immediately used for any purpose of the corporation or limited liability company must be available to be leased by persons who farm or ranch as sole proprietorships or partnerships, or by corporations or limited liability companies allowed to engage in farming or ranching under section 10–06.1–12.

[¶ 10] Crosslands did not seek and secure prior approval from the Governor under N.D.C.C. § 10–06.1–10 before purchasing the 949–acre tract in Griggs County. Rather, it purchased the land and sought to invoke the statutory procedure for gubernatorial approval only after being notified that the purchase violated N.D.C.C. ch. 10–06.1. Crosslands submitted a retroactive "Acquisition Proposal" for its purchase of the entire 949–acre tract to NAAAC. NAAAC recommended that approval be denied, and the Governor ultimately refused to approve Crosslands' purchase of the land.

[¶ 11] It was not until the State began this litigation, after the Governor had disapproved the purchase and Crosslands had failed to divest its interest in the property, that Crosslands first argued that some portions of the 949–acre tract did not constitute farmland or ranchland and were not subject to N.D.C.C. ch. 10–06.1. Crosslands urged the district court to dissect its purchase of the 949–acre tract and separately consider small, individual tracts within the 949–acre purchase. The district court accepted the invitation and conducted a piecemeal examination of individual portions of the land, engaging in a detailed

analysis of the use, erodibility, soil analysis, topography, and agricultural profitability of those individual tracts. Employing this analysis, the court determined that 267 acres within the 949–acre tract were not farmland or ranchland.

[¶ 12] The State contends the district court erred in engaging in this piecemeal analysis of the 949–acre tract purchased by Crosslands. The State argues the entire purchase must be considered as a whole and be declared farmland or ranchland if the predominant use and purpose of the land is for farming or ranching.

[¶ 13] We see nothing in the relevant statutory provisions authorizing the procedure urged by Crosslands and used by the district court in this case. Rather, the enforcement provisions in N.D.C.C. ch. 10–06.1 indicate the land should be considered as a single unit in determining whether divestiture is required. Section 10–06.1–24(1), N.D.C.C., requires the recorder to deliver to the Attorney General a copy of every instrument filed or recorded which conveys title to farmland or ranchland to a corporation or limited liability company. The Attorney General thereafter "shall commence an action" if he has reason to believe there has been a violation of the chapter, and "[i]f the [district] court finds that *the land in question* is being held in violation of this chapter ... the court shall enter an order so declaring." N.D.C.C. § 10–06.1–24(1) (emphasis added). We construe the language "the land in question" as referring to the entire tract purchased and requiring the court to view the property as a single tract. Directing the court to discern whether "the land in question" is being held in violation of N.D.C.C. ch. 10–06.1 does not suggest a piecemeal analysis of discrete, individual segments within the tract. This statutory scheme does not indicate the legislature intended to create an unwieldy procedure allowing a

nonprofit corporation to purchase large tracts of rural land, much of it admittedly agricultural, and then placing the burden upon the district court to engage in an acre-by-acre, after-the-fact assessment to determine the agricultural status of small portions of the tract.

[¶ 14] This interpretation of the statute is also consistent with its remedial nature. A remedial statute must be construed liberally with a view to effecting its objects, promoting justice, and effectuating the public policy articulated therein. *Wolt v. Wolt*, 2010 ND 33, ¶ 9, 778 N.W.2d 802; *Newland v. Job Serv. North Dakota*, 460 N.W.2d 118, 122 (N.D.1990). The public policy underlying the restrictions on corporate ownership of farmland or ranchland is rooted in the desire to preserve availability of rural agricultural land for use by family farmers. *See* North Dakota Legislative Council, *Report to the Forty–Ninth Legislative Assembly* 132–34 (1985). That public policy would not be served by an interpretation allowing the procedure engaged in by Crosslands in this case.

[¶ 15] At all times until this litigation, Crosslands treated the entire 949–acre tract as a single unit. Crosslands purchased it as a unit and presented it to NAAAC and the Governor for approval as a single 949–acre unit of farmland. NA-AAC and the Governor considered and rejected the purchase as a single unit. *Cf. Quist v. Best Western International, Inc.*, 354 N.W.2d 656, 663–64 (N.D.1984) (party who invoked the Securities Commissioner's authority and sought an exemption under a regulatory statute could not thereafter challenge the Commissioner's authority to act).

[¶ 16] Under the circumstances in this case, we conclude the district court erred in engaging in a detailed analysis of small, individual portions within the 949–acre tract. The court should have viewed the 949–acre tract purchased by Crosslands as a single unit, and if the predominant use and nature of the tract was for farming or ranching, the purchase violated N.D.C.C. ch. 10–06.1 and Crosslands should have been required to divest its interest in the entire 949–acre tract. *See* N.D.C.C. § 10–06.1–24(1).

[¶ 17] Crosslands, although arguing for a piecemeal analysis, has not challenged the State's contention that the vast majority of the land is agricultural and that the predominant use and nature of the 949–acre tract is as farmland or ranchland. Even employing a piecemeal analysis, the district court concluded that only 267 acres within the tract were nonagricultural, leaving 682 acres which are farmland or ranchland. Thus, at a minimum, 72 percent of the 949–acre tract is farmland or ranchland. We conclude that, as a matter of law, the predominant use or nature of the 949–acre tract is as farmland or ranchland and Crosslands must divest its interest in the entire tract.

III

[¶ 18] The parties have raised arguments regarding the business purpose exception, N.D.C.C. § 10–06.1–07, for a nonprofit organization's purchase of land for the purpose of conserving or protecting wildlife habitat. The district court held the business purpose exception applied and allowed Crosslands to retain farmland or ranchland which was "immediately adjacent to the non-agricultural wetlands and highly eroded lands." We conclude this issue is rendered moot by our resolution of the first issue. The business purpose exception relied upon by Crosslands and the district court applies only "for uses supportive of or ancillary to adjacent nonagricultural land" owned by the corporation. N.D.C.C. § 10–06.1–07. Because we have held that the entire 949–acre tract is to be considered farmland or ranchland, Crosslands does not own any "adjacent nonagricultural land" which

could provide the basis for "supportive" or "ancillary" use under N.D.C.C. § 10–06.1–07. The business purpose exception issue is therefore moot and need not be addressed. *See State v. Skarsgard*, 2007 ND 160, ¶ 18, 739 N.W.2d 786; *In re M.B.*, 2006 ND 19, ¶ 22, 709 N.W.2d 11.

### IV

[¶ 19]   We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  We reverse the judgment and remand for entry of judgment directing Crosslands to divest itself of the entire 949–acre tract within one year from the date of this opinion.  *See* N.D.C.C. § 10–06.1–24(1).

[¶ 20] GERALD W. VANDE WALLE, C.J., BRUCE B. HASKELL, D.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

[¶ 21] The Honorable BRUCE B. HASKELL, D.J., sitting in place of KAPSNER, J., disqualified.