2014 ND 71

**Wayne STENEHJEM, Attorney General, ex rel. STATE of North Dakota, Plaintiff, Appellant and Cross–Appellee**

v.

**NATIONAL AUDUBON SOCIETY, INC., Defendant, Appellee and Cross–Appellant.**

No. 20130279.

Supreme Court of North Dakota.

April 8, 2014.

Rehearing Denied May 5, 2014.

Matthew A. Sagsveen, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for plaintiff, appellant and cross-appellee.

Sarah A. Herman (argued) and Ross A. Nilson (on brief), Fargo, ND, for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Wayne Stenehjem, as Attorney General on behalf of the State of North Dakota ("State"), appealed, and the National Audubon Society cross-appealed from a district court judgment dismissing the Attorney General's corporate farming enforcement action against Audubon and upholding the constitutionality of North Dakota's Corporate Farming Law, N.D.C.C. ch. 10–06.1. We affirm the judgment, concluding the equitable defense of laches bars the State's divestiture claim. We refrain from addressing the constitutionality of the Corporate Farming Law because the affirmative defense of laches provides an alternative basis upon which the case may be disposed.

I

[¶ 2] The National Audubon Society is a nonprofit conservation organization whose mission is "to conserve and restore natural ecosystems, focusing on birds, other wildlife, and their habitats for the benefit of humanity and the earth's natural diversity." In 1988, Audubon acquired a 263–acre parcel of land in Stutsman County pursuant to a deed recorded in the office of the register of deeds for Stutsman County. The 263–acre parcel is adjacent to a tract of land Audubon previously purchased called the Edward M. Brigham Alkali Lake Sanctuary. According to an affidavit of Genevieve Thompson, Vice President and Executive Director of Audubon Dakota, "[t]he Sanctuary is home to a number of wetland- and grassland-dependent birds including numerous species of waterfowl, herons, terns, yellowlegs, upland sandpiper, multiple sparrow species, and sharp-tailed grouse." Audubon contends the 263–acre area is essential to its purpose of providing wetland and grassland complexes for avian habitat. Since purchasing the 263–acre parcel in 1988, Audubon has paid an assessment to Stutsman County each year in an amount equal to the property tax valuation of the property.

[¶ 3] At the time Audubon purchased the 263 acres, and for decades prior to that time, the land was cultivated for farming and ranching purposes. Since Audubon's purchase, the predominant use of the land has been for conservation purposes and to increase avian habitat value. Audubon leases approximately sixty acres to a neighboring farmer who harvests hay. Approximately fifty acres are enrolled in a United States Department of Agriculture Conservation Reserve Program which provides an annual payment for each acre of land that has been removed from agricultural production and replanted with native grassland.

[¶ 4] In January 2005, the State filed suit against Crosslands, Inc., a non-profit conservation corporation, for land acquisitions Crosslands made in violation of the Corporate Farming Law. During the course of litigation, Crosslands alleged that the State was aware of, and disregarded other alleged violations of the Corporate Farming Law. The State denied the selective enforcement allegations and subsequently conducted a review to determine if other non-profit entities were in violation of the Corporate Farming Law. In September 2005, the Attorney General received a number of deeds from the Stutsman County Auditor, including Audubon's

1988 deed conveying the 263 acres at issue here. The State contends Audubon's acquisition and ownership of the land did not meet the requirements of North Dakota's Corporate Farming Law, including the procedure for nonprofit organizations to purchase property.

[¶ 5] In 2007, the State and Audubon entered into a Tolling Agreement providing that the State would not file suit against Audubon until thirty days after a district court judgment in *Stenehjem v. Crosslands, Inc.*, Civ. No. 20-05-C-02. Judgment was entered in that case on June 18, 2009. *See Stenehjem ex rel. State v. Crosslands, Inc.*, 2010 ND 91, 782 N.W.2d 632. On July 20, 2009, the State commenced this enforcement action, over twenty years after Audubon initially purchased the land at issue.

[¶ 6] In 2010, the State filed a motion for summary judgment arguing that Audubon violated N.D.C.C. ch. 10-06.1, requesting judgment on Audubon's affirmative defenses of laches, statute of limitations, estoppel, and waiver, and contending that Audubon did not qualify for the business purpose or farm lease exceptions of Chapter 10-06.1. Audubon filed its own motion for summary judgment arguing Chapter 10-06.1 violates the Commerce Clause and Equal Protection Clause of the United States Constitution. The court denied the State's motions for summary judgment on the affirmative defenses of laches and the statute of limitations. The court also denied Audubon's motion for summary judgment based on the alleged violations of the Commerce Clause and the Equal Protection Clause. The court granted the State's motion for summary judgment with respect to the affirmative defenses of waiver, estoppel, and the business purpose and farm lease exceptions of Chapter 10-06.1.

[¶ 7] Thereafter, the parties agreed upon a joint litigation plan, approved by the court, whereby the parties would provide additional briefing and the court would make factual findings and conclusions of law based on evidence previously submitted through affidavits. In January 2013, the court issued a memorandum finding that Audubon's statute of limitations defense did not apply because the State did not have reason to believe Audubon violated N.D.C.C. ch. 10-06.1 until 2005. The court did conclude, however, that the affirmative defense of laches was appropriate given the State's delay in commencing the action. In July 2013, the court issued its findings of fact, conclusions of law and order for judgment dismissing the State's action.

II

[¶ 8] Under North Dakota's Corporate Farming Law, N.D.C.C. ch. 10-06.1, corporations are generally prohibited from owning or leasing farm or ranch land. It provides:

> All corporations and limited liability companies, except as otherwise provided in this chapter, are prohibited from owning or leasing land used for farming or ranching and from engaging in the business of farming or ranching. A corporation or a limited liability company may be a partner in a partnership that is in the business of farming or ranching only if that corporation or limited liability company complies with this chapter.

N.D.C.C. § 10-06.1-02. The general restriction against corporate farm ownership dates back to 1932, when North Dakota voters approved an initiated measure restricting corporations from owning farm or ranch land and from engaging in the business of farming or agriculture. *State v. J.P. Lamb Land Co.*, 401 N.W.2d 713, 715 (N.D.1987); *see also* Ross H. Espeseth,

*North Dakota's Corporate Farming Statute: An Analysis of the Recent Change in the Law*, 58 N.D. L.Rev. 283, 284. The public policy underlying the restrictions on corporate ownership of farmland is rooted in the desire to preserve rural agricultural land for use by family farmers. *Stenehjem ex rel. State v. Crosslands, Inc.*, 2010 ND 91, ¶ 14, 782 N.W.2d 632.

[¶ 9] The Corporate Farming Law contains certain exceptions allowing nonprofit organizations to acquire farmland for the purpose of conserving natural areas and habitats for biota. The nonprofit exception currently provides:

A nonprofit organization may acquire farmland or ranchland only in accordance with the following:

1. Unless it is permitted to own farmland or ranchland under section 10–06.1–09, the nonprofit organization must have been either incorporated in this state or issued a certificate of authority to do business in this state before January 1, 1985, or, before January 1, 1987, have been incorporated in this state if the nonprofit organization was created or authorized under Public Law No. 99–294 [100 Stat. 418].

N.D.C.C. § 10–06.1–10(1). Audubon was not registered with the Secretary of State to do business in North Dakota until 1989, after the 1985 cutoff date. Audubon admitted in its pleadings that it did not meet the requirements of the nonprofit exception, and additionally stated in its summary judgment brief that "[t]he commission of the offense under N.D.C.C. § 10–06.1–02 [prohibition against corporate ownership of farmland] occurred in November 1988."

[¶ 10] Since 1981, the Attorney General has been tasked with bringing an enforcement action in the district court of the county in which a substantial portion of the farmland is situated, if the Attorney General has reason to believe any person is violating the statute. 1981 N.D. Sess. Laws ch. 134, § 10. At the time Audubon purchased the property at issue, the statute provided:

The register of deeds [County Recorder] shall mail or deliver a copy of every instrument filed or recorded ... within thirty days of the effective date of this Act or thirty days after the instrument is recorded, whichever is later, to the attorney general if the instrument documents evidence of a lease agreement or purchase agreement ... or if the instrument conveys the title to farmland or ranchland to a corporation.

1987 N.D. Sess. Laws ch. 136, § 1. The current enforcement language is codified at N.D.C.C. § 10–06.1–24(1). The Attorney General, on behalf of the State, brought this corporate farming enforcement action against Audubon for its alleged violation of N.D.C.C. ch. 10–06.1 in 2009.

### III

[¶ 11] On appeal, the State argues the district court erred by allowing Audubon to invoke the equitable doctrine of laches as a defense in this sovereign governmental enforcement action. The district court found that Audubon's affirmative defense of laches was not barred under the laws of North Dakota.

[¶ 12] A "stale claim" may be barred by the equitable defense of laches. *Sall v. Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Johnson v. State*, 2006 ND 122, ¶ 8, 714 N.W.2d 832. "[L]aches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to an-

other." *Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state." *Bakken v. Duchscher*, 2013 ND 33, ¶ 19, 827 N.W.2d 17. "The party invoking laches has the burden of proving he was prejudiced because his position has become so changed during the delay that he cannot be restored to the status quo." *Id.*

[¶ 13] The determination of whether laches applies is a fact intensive inquiry. "Whether or not laches bars a claim must be determined by examining the underlying facts and circumstances of each particular case." *Williams Cnty. Soc. Servs. Bd. v. Falcon*, 367 N.W.2d 170, 174 (N.D.1985). Thus, laches is generally a question of fact that is reviewed under the clearly erroneous standard of review. *Bakken*, 2013 ND 33, ¶ 20, 827 N.W.2d 17. Here, however, because the issue of whether laches can be invoked against the State concerns the application and interpretation of the law and not a factual dispute, we will apply a de novo standard of review. *See, e.g., Green v. Green*, 2009 ND 162, ¶ 5, 772 N.W.2d 612 (stating, "Questions of law are reviewed de novo.").

[¶ 14] This Court has not determined whether laches, as a matter of law, may be applied to bar a governmental claim. The State argues that laches should not be applied against the State. Alternatively, the State contends laches should be applied in similar fashion as the equitable defense of estoppel, that is, conditioned or limited to rare and unusual circumstances to avoid an obvious injustice. In limited circumstances, a party may invoke the equitable defense of estoppel against the government. In *Blocker*

*Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D.1984), this Court held:

> estoppel against the government is not absolutely barred as a matter of law, even in matters concerning taxation. In so holding, we join the increasing number of jurisdictions that have narrowed the scope of governmental protection. We emphasize that the doctrine is not one which should be applied freely against the government, but likewise it is not one which should never be available. It is a doctrine which must be applied on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is not applied versus the public interest at stake and the resulting harm to that interest if the doctrine is applied.

*See also id.* at 923 (VandeWalle, J. concurring) (stating equitable estoppel should only be applied in "rare and unusual circumstances" where there is "obvious injustice which would result").

[¶ 15] Laches and estoppel are both affirmative defenses, and thus must be affirmatively pled by the defendant. N.D.R.Civ.P. 8(c)(1). Similarly, laches and estoppel are both equitable defenses. Although estoppel and laches each arise out of equity, they are distinguishable. "The emphasis in laches is on delay; the emphasis on estoppel is on misleading." *Leisure Hills of Grand Rapids, Inc. v. Minnesota Dep't of Human Servs.*, 480 N.W.2d 149, 151 (Minn.Ct.App.1992). The Federal Circuit Court of Appeals has also differentiated laches from estoppel, in the context of patent infringement:

> laches focuses on the reasonableness of the plaintiff's delay in suit. . . . equitable estoppel focuses on what the defendant has been led to reasonably believe from the plaintiff's conduct. Thus, for laches, the length of delay, the seriousness of

prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1034 (Fed.Cir. 1992). Whereas laches is based on the unreasonable passage of time or delay in pursuing a claim, equitable estoppel is founded on principles of fraud. Courts that have permitted laches and equitable estoppel as defenses against the State have done so in a limited fashion. *See Embassy Real Estate Holdings, LLC v. D.C. Mayor's Agent for Historic Pres.*, 944 A.2d 1036, 1049 (D.C.2008) (stating the equitable doctrines of laches and estoppel are to be narrowly applied against the government); *Marion Cnty. v. State*, 888 N.E.2d 292, 299 (Ind.Ct.App.2008) (stating laches and estoppel may not be asserted against governmental bodies unless the party claiming laches or estoppel can show it is not inconsistent with the public interest).

[¶ 16] Although we have never affirmatively concluded whether or not laches can be invoked against the State, this Court has discussed and rejected substantive arguments for laches that were made against social service boards in recoupment actions. In *Williams Cnty. Soc. Servs. Bd. v. Falcon*, 367 N.W.2d 170, 175 (N.D.1985), the Williams County Social Services Board commenced a paternity action against Falcon seeking to recover public assistance payments made to benefit his alleged child. Falcon argued he was unduly prejudiced in the delay of the board in asserting its claim. *Id.* The child was born in 1975 and the action commenced in 1983. This Court concluded, "[w]e do not believe the facts and circumstances of this case, as developed at trial, require application of the doctrine of laches." *Id.* Similarly, in *Inter-*

*est of K.E.N.*, 513 N.W.2d 892, 898 (N.D. 1994), we concluded, on substantive grounds, that the Stutsman County Social Services Board was not barred by laches from seeking to recoup child support and AFDC benefits paid to the child's mother. Less than two years had elapsed from the time the child's mother assigned her right to child support to Stutsman County Social Services, and the commencement of the recoupment suit. *Id.* Given those facts, we stated, "this is not the type of undue prejudice from delay that requires application of the doctrine of laches." *Id.*

[¶ 17] Generally, there is no absolute governmental immunity from laches under all circumstances; certain unusual, extraordinary, or compelling circumstances may justify applying laches to state government suits. 27 Am.Jur.2d *Equity* § 122 (2013).

[L]aches generally is inapplicable against state government actions that assert or seek to enforce public rights or interests, or where the state government is acting in its governmental capacity, in the exercise of a governmental function, or is pursuing a suit founded on a sovereign right. The considerable reluctance to apply laches in such cases stems from concerns that imposing laches may impair the functioning of the government body, and that valuable public interests may be jeopardized or lost by the negligence, mistakes, or inattention of public officials.

*Id.; see also Van Milligan v. Bd. of Fire & Police Comm'rs*, 158 Ill.2d 85, 196 Ill.Dec. 665, 630 N.E.2d 830, 833 (1994). Here, the district court found that the State was acting in its sovereign capacity in bringing this action for divestiture and not carrying out a proprietary function.

[¶ 18] We conclude that the equitable defense of laches against the govern-

ment is not absolutely barred as a matter of law. Our holding is a narrow one. Similar to estoppel, laches is a doctrine which should not be freely applied against the government without first taking into account the valuable public interests that may be jeopardized or lost. *Van Milligan,* 196 Ill.Dec. 665, 630 N.E.2d at 833. It is a limited doctrine which should be determined "on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is not applied versus the public interest at stake and the resulting harm to that interest if the doctrine is applied." *Miller v. Walsh Cnty. Water Res. Dist.,* 2012 ND 152, ¶ 28, 819 N.W.2d 526.

IV

[¶ 19] Having concluded that Audubon may invoke the equitable defense of laches against the State, our next task is to apply the substantive law of laches to this action and determine whether the district court properly applied the doctrine to the facts of this case.

[¶ 20] The State contends that under a more restrictive standard, Audubon has failed to meet its burden on the affirmative defense of laches. We disagree. Weighing the inequities that would result if laches is not applied versus the public interest at stake and the resulting harm to the public interest if laches is applied, we conclude laches is appropriate given the facts of this case. Although we are cautious in applying laches against the government, the twenty year delay in the suit and the seriousness of prejudice caused by divestment are too great to disregard. Furthermore, given the many years that have passed since the initial purchase was made and the development of the 263 acres as an integral component to the Edward M. Brigham Alkali Lake Sanctuary, in this case alone, it is speculative there will be any resulting harm to the public interest of preserving the availability of rural agricultural land for use by family farmers. *See Crosslands, Inc.,* 2010 ND 91, ¶ 14, 782 N.W.2d 632.

[¶ 21] The State additionally argues that Audubon cannot assert the equitable remedy of laches because of its unclean hands in acquiring property in violation of ch. 10–06.1. Audubon argues the doctrine of unclean hands not only requires misconduct, but that the defendant's misconduct was responsible for the plaintiff's delay in bringing the suit. *See Serdarevic v. Advanced Med. Optics, Inc.,* 532 F.3d 1352, 1361 (Fed.Cir.2008). Audubon contends there have been no allegations its alleged misconduct resulted in the delay in bringing the action.

[¶ 22] One of the maxims of jurisprudence set forth in N.D.C.C. § 31–11–05(8) provides that "[a] person cannot take advantage of that person's own wrong." Generally, equitable defenses are not available where the defendant has unclean hands. *See Borth v. Gulf Oil Exploration & Prod. Co.,* 313 N.W.2d 706, 711 (N.D. 1981).

[¶ 23] Here, the facts show Audubon purchased the land in violation of the Corporate Farming Law. Audubon also seeks an equitable remedy. However, there is nothing in the record to show that Audubon had actual, as opposed to presumed, knowledge the land purchase violated state law, engaged in any misconduct to delay the suit, or attempted to hide or mislead the State concerning its acquisition and ownership of the property in any way. To the contrary, Audubon recorded its deed with the Stutsman County Recorder in 1988 and has paid an assessment on the property each year. Given these facts, the unclean hands doctrine is not applicable in this case.

V

[¶ 24] The State argues the court erred when it did not cancel allegedly conflicting presumptions relating to notice. Laches requires notice or awareness of the potential claim. "[P]arties against whom a claim of laches is sought to be invoked must be actually or presumptively aware of their rights and must fail to assert those rights against parties who in good faith changed their position and cannot be restored to their former state." *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 767 (N.D.1996).

[¶ 25] Rule 301, N.D.R.Ev., states that, in civil cases, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed. A party against whom a presumption is directed has the burden of rebutting the presumption by proving the nonexistence of the presumed fact is more probable than its existence. *Id.* Section 31–11–03(15), N.D.C.C., establishes as a disputable presumption that an "official duty has been performed regularly." This Court has previously held that "identical conflicting presumptions balance and cancel each other." *Thompson v. Nettum*, 163 N.W.2d 91, 97 (N.D.1968). "Whether a presumption arises, and whether a presumption has been rebutted, are questions of fact governed by the clearly erroneous standard of review under N.D.R.Civ.P. 52(a)." *In re Estate of Clemetson*, 2012 ND 28, ¶ 11, 812 N.W.2d 388.

[¶ 26] The district court found that Audubon filed the deed in question with the Stutsman County Recorder in November, 1988. The court reasoned that, because the County Recorder recorded the deed, it is presumed under N.D.C.C. § 31–11–03(15) that the County Recorder transmitted the deed to the Attorney General within thirty days after it was recorded, as was required by N.D.C.C. § 10–06–13, now codified at N.D.C.C. § 10–06.1–24. Initially, the court also accepted the presumption that the Attorney General regularly performed his official duty to bring an action. The court subsequently found that the presumption, as it relates to the Attorney General, was rebutted by the fact of filing this action in 2009, and the presumption faded away and did not act to cancel the contradicting presumption. The court's reasoning for this finding is not entirely clear, but it appears the court determined the long delay in filing suit evidenced the fact that the duty to bring an enforcement action was not being performed regularly.

[¶ 27] Applying the facts, the court was not clearly erroneous when it determined the presumption as it relates to the Attorney General was rebutted and therefore could not act to cancel the allegedly contradicting presumption of the County Recorder performing her regular duty. Because one presumption had been rebutted, there could be no conflict, and no need to cancel the presumptions.

A.

[¶ 28] The State also argues the court erred when it found the State failed to rebut the presumption under N.D.R.Ev. 301 that the County Recorder performed her duty and provided a copy of the deed to the Attorney General. The State contends that various affidavits from employees at the County Recorder and Attorney General's office rebut the presumption that the County Recorder performed its duties regularly by recording the deed and transmitting the deed to the Attorney General. *See* N.D.C.C. § 10–06.1–24. The State argues the affidavits show a history of noncompliance with the statute.

[¶ 29] In its memorandum opinion, the district court reviewed the affidavits of Stutsman County Recorder Berg, employ-

ees Batesole, Robyt, Samek and Attorney General's office employees Kvislen and Hoberg. The court found Robyt began work at the County Recorder office in 1995, and had no personal knowledge of events in 1988. The court found Berg and Batesole had no recollection of sending any deeds to the Attorney General's office. Samek also did not recall sending any deeds to the Attorney General, and believed that no deeds were sent until later. The court also found Kvislen and Hoberg were not employed at the Attorney General's office at the time in question.

[¶ 30] The court found the claim that the County Recorder was not familiar with the law was not supported by the legislative history. The Cass County Register of Deeds and Chairperson of the North Dakota Register of Deeds Association Legislative Committee, the Stark County Register of Deeds, and the Association of Counties all testified in opposition to the bill due to the reporting requirements. Additionally, the court found the 263–acre tract was transferred to Audubon by warranty deed dated November 1, 1988, and recorded in the office of County Recorder on November 10, 1988.

[¶ 31] The court applied the presumption, based on the facts, that the County Recorder's office performed its official duty and submitted Audubon's deed to the Attorney General. Thus, although the court did not make a specific finding, it appears the court reasoned the Attorney General was then presumptively aware of the purchase. Actual or presumptive awareness is one of the essential elements of the doctrine of laches. The record reflects actual knowledge, at least by 2005.

[¶ 32] We conclude the district court's finding that the State failed to rebut the presumption that the County Recorder performed her official duty was not clearly erroneous because there is evidence to support it, and it is not induced by an erroneous view of the law.

## B.

[¶ 33] The State contends the court erred when it determined Audubon rebutted the presumption the Attorney General performed his regular duty. The State argues there is no credible evidence establishing the Attorney General had notice of Audubon's purchase in 1988.

[¶ 34] Although the State focuses on the notice element of laches, given the facts of this case, we conclude that the elements of prejudice to the opposing party and the length of delay outweigh the considerations of notice. *See Falcon*, 367 N.W.2d 170, 174 (N.D.1985) (stating, "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay."). Additionally, we are not convinced that the only notice the Attorney General requires must be from the County Recorder. Indeed, the applicable language under the current enforcement statute provides, "The attorney general shall commence an action ... if the attorney general has reason to believe that any person is violating this chapter." N.D.C.C. § 10–06.1–24(1). To the extent the Attorney General may rely on the notice from the County Recorder as the only action triggering notification to the State of illegal ownership of farm or ranch land, the 1988 deed was an open record and Audubon's use of the land as a wildlife sanctuary should have been readily apparent. Looking at the plain language of the statute, we conclude there are additional methods beyond receiving notice from the County Recorder that would suffice in undergirding an enforcement action.

[¶ 35] Applying the clearly erroneous standard of review, we conclude the court

did not err when it determined the "presumption as it relates to the Attorney General is rebutted by the fact of the filing of this matter in 2009." The long period of delay in filing suit evidences the fact that the duty to enforce the law was not regularly being performed.

## VI

[¶ 36] The State argues Audubon would not be prejudiced if it was ordered to divest itself of the 263 acres. "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Falcon,* 367 N.W.2d 170, 174 (N.D.1985). "Laches is generally a question of fact." *Bakken v. Duchscher,* 2013 ND 33, ¶ 20, 827 N.W.2d 17. A finding of fact is reviewed under the clearly erroneous standard. *Id.*

[¶ 37] The court found the 263–acre tract had a value of $51,600 in 1989, and a value of $72,200 in 2009. Additionally, "Audubon has paid the sum of $18,438 in assessments up until the 2009 tax year, and has practiced weed control, managed the property, and re-seeded 49 acres. Audubon has also enhanced and restored the wetlands."

[¶ 38] The finding of the court that Audubon would be prejudiced if it were forced to divest itself of the property is not clearly erroneous. The evidence shows Audubon restored habitats, made various improvements, paid property taxes on the property since 1989, and the property value has increased. Furthermore, carefully weighing the inequities that would result in forcing Audubon to divest its property against the underlying policy of preserving agricultural land for use by family farmers, we are not convinced the affirmative defense of laches, in this case, would unduly prejudice the public interest of preserving agricultural lands for family farm cultivation. Given the small acreage of the land in isolation, and the fact that Audubon leases over sixty acres of the land to a neighboring farmer who harvests hay twice annually, any impairment to the public policy at stake here pales in comparison to the prejudice associated with forcing Audubon to divest its property.

## VII

[¶ 39] On cross-appeal, Audubon argues North Dakota's Corporate Farming Law, N.D.C.C. ch. 10–06.1, violates the Commerce Clause and Equal Protection Clause of the United States Constitution. Because this case can be resolved on the basis of laches, we decline to address the constitutional arguments raised by Audubon. *See Bismarck Pub. Sch. v. Walker,* 370 N.W.2d 565, 566 (N.D.1985) (stating, "It is a well-settled rule of decision making that a court will refrain from deciding constitutional issues where there are appropriate alternative grounds to resolve the case before it.").

## VIII

[¶ 40] We affirm the district court's judgment dismissing the State's corporate farming enforcement action against Audubon, concluding the equitable defense of laches bars the State's divestiture claim. We decline to address the constitutionality of the Corporate Farming Law because the affirmative defense of laches provides an alternative basis upon which the case may be resolved.

[¶ 41] ALLAN L. SCHMALENBERGER, S.J., CAROL RONNING KAPSNER and DANIEL J. CROTHERS, JJ., concur.

[¶ 42] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of McEVERS, J., disqualified.

SANDSTROM, Justice, dissenting.

[¶ 43] I respectfully dissent. The Audubon corporation cannot rely on its ongoing and longtime violation of the Corporate Farming Law to justify its continuing violation. Like all persons, the Audubon corporation is presumed to know the law and is properly precluded from claiming benefit from its wrongful conduct.

I

[¶ 44] This Court has previously indicated that compliance with North Dakota's Corporate Farming Law is a continuing obligation:

> The 1981 amendments repealed the exception relied upon by the district court in its 1965 decision, leaving in effect statutory language which forbids the ownership of land by a corporation except under circumstances not here pertinent. That language provides no authorization for a corporation such as Lamb to own farmland. Rather, the unambiguous language of the 1981 amendments can only be construed to mean that the Legislature intended that a corporation's continuing ownership of farmland is subject to those amendments.

State v. J.P. Lamb Land Co., 401 N.W.2d 713, 717 (N.D.1987) (footnote omitted).

[¶ 45] When there is a continuing obligation, laches does not apply. See, e.g., Richter v. Richter, 126 N.W.2d 634, 637 (N.D.1964) ("It has been held that, since a divorce decree providing for the payment of alimony is a continuing order, the enforcement thereof cannot be barred by laches, and that mere lapse of time alone will not suffice to defeat a claim for alimony due.").

[¶ 46] The Audubon corporation bought farmland in violation of the Corporate Farming Law. Under the caselaw of this Court, the Corporate Farming Law does not hold corporations liable only for a once-in-time violation of the law, but rather requires a continuing obligation of compliance. See J.P. Lamb Land Co., 401 N.W.2d at 717. The Audubon corporation is therefore subject to a continuing obligation to not own farmland. Because there was a continuing obligation which Audubon violated, I would conclude that laches does not apply in this case.

II

[¶ 47] Even if the doctrine of laches applied in this case, I disagree with the majority's position that the unclean hands doctrine does not apply to prevent the Audubon corporation from asserting the defense of laches. The "clean hands" doctrine generally provides:

> "Clean hands" is a legal euphemism which refers to the acceptability, cleanliness, and decency of the claim put forth. It means that a claim tainted with deceit and impurity of motive, which, if of decent character, would perhaps receive approval, will unhesitantly be ignored. It means that whenever a party who seeks to set the judicial machinery in motion and obtain some equitable remedy has violated conscience or good faith, or another equitable principle in prior conduct with reference to the subject in issue, the doors of equity will be shut[.]

27A Am.Jur.2d Equity § 98 (footnote omitted).

[¶ 48] The State argues the Audubon corporation cannot assert the equitable remedy of laches because of its unclean hands in acquiring property in violation of North Dakota law. See Majority, at ¶ 21. Concluding the unclean hands doctrine does not apply in this case, the majority responds by stating, "[T]here is nothing in the record to show that Audubon had actual, as opposed to presumed, knowledge the

land purchase violated state law, engaged in any misconduct to delay the suit, or attempted to hide or mislead the State concerning its acquisition and ownership of the property in any way." *Id.* at ¶ 23. Contrary to the majority's reasoning for refusing to apply the doctrine of unclean hands, this Court has previously held, "Every person generally is charged with knowledge of the provisions of statutes and regulations and must take notice thereof." *Gonzalez v. Tounjian,* 2003 ND 121, ¶ 20, 665 N.W.2d 705. "To each petitioner knowledge of the law must be presumed." *State v. Hanna,* 31 N.D. 570, 154 N.W. 704, 707 (1915); *see also Paulson v. Ward Cnty.,* 23 N.D. 601, 137 N.W. 486, 487 (1912) ("With knowledge of the law thus imputed and conclusively presumed, the acceptance of the warrant operated as an accord and satisfaction. . . ."). For the Audubon corporation to overcome the presumption it knew it was violating the law, it must make some showing to the contrary.

[¶ 49] This Court has recognized the potential danger in allowing businesses to claim ignorance of the law:

> Even if neither the seller of the securities nor the purchaser of the securities was cognizant of the restriction contained in Section 40–57–10, N.D.C.C., such a fact could not justify a rescission of the contract under Subsection (1), as such a fact would not constitute a misapprehension or a misunderstanding by the parties of the meaning of any particular law. It might instead constitute an ignorance of the law. If we were to permit a rescission based upon ignorance of the law, we would set a precedent which could completely upset the business community of this state.

*Security State Bank v. State of North Dakota,* 181 N.W.2d 225, 234 (N.D.1970).

[¶ 50] In order to prove it did not know the law, the Audubon corporation would have to show that its agents did not know the law. *See, e.g., Am. Bank Ctr. v. Wiest,* 2010 ND 251, ¶ 15, 793 N.W.2d 172 ("Generally, the knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation."). This rationale has been applied in the criminal context as well:

> Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:
>
> 1.  A statute or other enactment.
> 2.  A judicial decision, opinion, order, or judgment.
> 3.  An administrative order or grant of permission.
> 4.  An official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the crime.

N.D.C.C. § 12.1–05–09.

[¶ 51] In this case, the Audubon corporation has made no showing that its agents did not know the corporation's purchase of the farmland was illegal. This is insufficient to overcome the presumption that the Audubon corporation had knowledge of the law.

[¶ 52] "If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute a matter of defense." 27A Am.Jur.2d Equity § 104. Audubon's violation of North Dakota's Corporate Farming Law goes to the core of this action in equity. I would therefore conclude that even if laches applied in this case, the Audubon corporation is prevented from asserting this defense, because it has unclean hands as a result of its acquiring the farmland in violation of the Corporate Farming Law.

## III

[¶ 53]  It is only through a double standard—charging the Attorney General with presumed knowledge of Audubon's unlawful acts, at ¶¶ 25–27, but exonerating Audubon from its presumed knowledge of the unlawfulness of its acts, at ¶ 23—that the majority achieves its result.  The majority says presumed knowledge of the Attorney General is enough, but says Audubon has to have actual knowledge.  If presumed knowledge is the requirement of both the Attorney General and Audubon, Audubon loses.  If actual knowledge is required of both the Attorney General and Audubon, Audubon loses.  It is only through a double standard that Audubon prevails, and such a double standard is inconsistent with justice and equity, and the principles reflected in *Blocker Drilling Canada, Ltd. v. Conrad,* 354 N.W.2d 912 (N.D.1984).

## IV

[¶ 54]  Although the majority does not decide it, Audubon corporation has cross-appealed, challenging the constitutionality of North Dakota's Corporate Farming Law. The law is presumptively constitutional, *Weeks v. Workforce Safety & Insurance,* 2011 ND 188, ¶ 9, 803 N.W.2d 601, and the district court's analysis persuasive.

## V

[¶ 55]  I would reverse and remand.

[¶ 56]  DALE V. SANDSTROM