# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 128

Twin City Technical LLC, Three Horns Energy, LLC,
Prairie of the South LLC, and Irish Oil & Gas, Inc.,        Plaintiffs and Appellees

v.

Williams County and
Williams County Commission,        Defendants and Appellants

No. 20180264

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Justice.

Spencer D. Ptacek (argued) and Lawrence Bender (appeared), Bismarck, ND, for plaintiffs and appellees.

Scott K. Porsborg (argued) and Sarah E. Wall (appeared), Bismarck, ND, for defendants and appellants.

**Jensen, Justice.**

[¶1]   Williams County appeals from a judgment following the district court's determination that its oil and gas leases with Twin City Technical LLC, Three Horns Energy, LLC, Prairie of the South LLC, and Irish Oil & Gas Inc. ("Lessees"), were void because the County failed to comply with the public advertising requirements for the lease of public land as provided in N.D.C.C. ch. 38-09.  We affirm in part, reverse in part, and remand for consideration of the parties' equitable arguments relating to the lease bonus payments.


I

[¶2]   In February 2012, the County executed four oil and gas leases with Twin City and Irish Oil & Gas.  The leases were executed after the County's auditor received bids from various oil and gas entities.  The County received over $1.3 million in bonus payments for the leases.  Through assignments made by Twin City and Irish Oil, Three Horns and Prairie of the South became parties to the leases.

[¶3]   In September 2015, after learning the County may not own all of the subject minerals, the Lessees sued the County seeking rescission of the leases on the basis of mistake of fact, fraud, and failure of consideration.  In November 2016, the Lessees amended the complaint and sought declaratory relief alleging that no valid contract was formed because the County did not publicly advertise the leasing of the oil and gas as required by N.D.C.C. § 38-09-16 before executing the leases.  The Lessees alleged the County was unjustly enriched and sought restitution of the bonus payments made to the County.

1

[¶4] Both parties moved for summary judgment. The County argued the leases were valid because they were exempt from statutory advertising requirements. The district court granted the Lessees' motion, holding the leases were void because the County failed to comply with the statutory notice and bidding requirements of N.D.C.C. § 38-09-16 and that none of the exceptions to the notice and bidding requirements applied. The court also ordered repayment of the lease bonus payments, dismissing the County's laches defense.

## II

[¶5] This Court's standard of review for a district court's grant of summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 6, 903 N.W.2d 61 (quoting *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193).

[¶6] A board of county commissioners may lease mineral interests owned by a county. N.D.C.C. § 38-09-11. Section 38-09-16, N.D.C.C., provides that "[b]efore leasing any lands or interest therein or any mineral rights reserved in any conveyance

thereof, any county or other political subdivisions thereof shall advertise the same in like manner as provided in section 38-09-15." Section 38-09-15, N.D.C.C., requires that notice be given "in accordance with the rules of the board of university and school lands." The rules require notice of the lease to be published in the official newspaper of the county where the lease lands are located. N.D. Admin. Code § 85-06-06-03. The County concedes that it did not publish notice of the leases as required by N.D.C.C. § 38-09-16.

[¶7]   Under N.D.C.C. § 38-09-19:

> No lease of public land for exploration or development of oil and gas production is valid unless advertised and let as hereinbefore provided, except:
> 1.   Where the acreage or mineral rights owned by the state or its departments and agencies or political subdivisions is less than the minimum drilling unit under well spacing regulations, nonoperative oil and gas leases may be executed through private negotiation . . . .

Thus, under N.D.C.C. § 38-09-19(1), a county may lease minerals without publication only if the leases are nonoperative and less than the minimum drilling unit under well spacing regulations. If no exceptions apply, a county's lease of minerals in violation of N.D.C.C. § 38-09-16 is invalid.

[¶8]   Although the County did not publish notice of the leases, it argues the leases are valid. The County contends publication was not required because each lease was for less than the minimum drilling unit and were nonoperative based on the land they covered.

[¶9]   The district court concluded the leases were operative:

> It is a "well-settled rule that where the mineral estate is severed from the surface estate, the mineral estate is dominant." *Hunt Oil Co. v. Kerbaugh*, 283 N.W.2d 131, 135 (N.D. 1979). "A mineral interest is a property interest created after an oil and gas severance from the surface and generally includes the right to sell all or part of the estate, the right to explore and develop the estate, the right to execute oil and

3

gas leases, and the right to create fractional shares of the mineral estate." *Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476, 481 (N.D. 1991). When a mineral lease is executed the lessee "has an implied obligation to the lessor to do everything that a reasonably prudent operator should do in operating, developing and protecting the property with due consideration being given to the interests of both the lessor and lessee, if there is no express clause in the lease relieving the lessee of this implied duty." *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 835 (N.D. 1969). As *Feland* imposes upon the lessee an implied duty to operate, develop and protect, a mineral lease can only be "nonoperative" by the express terms of the lease.

The leases at issue in this matter do not expressly prohibit surface operations. All of the leases at issue in this matter expressly grant the Lessee "the right of mining, exploring by geophysical or other methods, and operating for and producing therefrom oil and gas." See docket numbers 16, 18, 19 and 20. The leases, by their express terms, are "operating" leases.

[¶10] The district court addressed a 1953 Attorney General opinion that discusses a county's lease of minerals. *See* N.D. Att'y Gen. No. 53-96 (Sept. 29, 1953). The opinion interprets language identical to N.D.C.C. § 38-09-19(1) and states "[w]e understand this [provision] to mean that a county . . . may lease tracts of land smaller than the minimum forty-acre drilling unit through private negotiation so long as the lease contains a non-drilling or non-development clause." *Id.* The opinion notes there was little authority on the term "non-operative," but states "this term has a commonly accepted definition in the oil and gas industry and this is synonymous with non-drilling or non-development." *Id*.

[¶11] Professors Williams and Meyers define a "non-development lease" as "[a] lease that prohibits the use of the surface for drilling and other drilling-related activities including access." 8 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law, Manual of Terms* 665 (LexisNexis Matthew Bender 2018). A "nondrilling lease" is "[a] lease which grants the lessee the usual rights relative to oil or gas under described premises but which provides that a well shall not be

4

surfaced on the premises." *Id.* The leases here do not include language prohibiting drilling or development. The district court did not err in concluding the leases are operative.

[¶12] This Court has discussed the validity of public contracts executed in violation of competitive bidding statutes. In *Northwestern Sheet & Iron Works v. Sioux Cty.*, 76 N.D. 451, 459-60, 36 N.W.2d 605, 609-10 (N.D. 1949), this Court stated:

> In *State ex rel. Diebold Safe & Lock Co. v. Getchell*, 3 N.D. 243, 55 N.W. 585, the plaintiff sought a writ of mandamus to compel the county auditor of Eddy County to certify and attest a warrant ordered to be drawn by the Board of County Commissioners in payment for jail cells and a corridor that had been furnished to the county. The contract for the purchase of this material was held to be void because the question of making the expenditure was never submitted to a vote of the people of the county as required by statute. It was further held that the illegal contract could not be ratified by the Board of County Commissioners because the board lacked power in the first instance to make such contract, that power being vested in the people. It was pointed out that this was not a case where there had been some irregularity in the exercise of power vested in the board. In *Bayne v. Thorson*, 37 N.D. 187, 163 N.W. 822, the Board of County Commissioners entered into a contract for the construction of a bridge without attempting to comply with the statute which required them to obtain plans and specifications for the proposed bridge and to advertise for sealed bids thereon. At the beginning of the opinion the court states that the action is upon contract for non-payment and not for the reasonable worth of materials and labor. This contract was held to be illegal and void and no recovery could be had thereunder. *St. Paul Foundry Co. v. Burnstad School District No. 31*, 67 N.D. 61, 269 N.W. 738, is cited and relied upon by the defendant county. The school board had purchased from plaintiff certain materials used in the construction of a gymnasium without advertising for bids. A warrant was issued for payment of the materials so purchased. Later the payment of the warrant was refused and the plaintiff brought suit thereon. This court pointed out that the question was not as to whether the plaintiff could recover the property or the reasonable value thereof, and that the suit was on a warrant which created no greater liability than the debt it represented. The debt being based on contract and the

5

contract having been made without compliance with a statute requiring advertisement for bids recovery on the warrant was denied. <u>These cases lead us to the conclusion that contracts for the sale of goods or material to a public corporation based upon procedures which contain major violations of mandatory statutes providing for competitive bidding are unenforceable in strictly legal actions.</u>

(Emphasis added.)

[¶13] The Lessees sought a declaratory judgment challenging the validity of the leases under N.D.C.C. § 38-09-19 because the County leased the minerals in violation of N.D.C.C. § 38-09-16. Under the declaratory judgment statutes, "[a]ny person interested under a deed, will, written contract . . . or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and may obtain a declaration of rights, status, or other legal relations thereunder." N.D.C.C. § 32-23-02.

[¶14] Section 38-09-19, N.D.C.C., plainly states "[n]o lease of public land for exploration or development of oil and gas production is valid unless advertised and let as hereinbefore provided." The County executed the leases in violation of N.D.C.C. § 38-09-16, and none of the exceptions to N.D.C.C. § 38-09-19 apply. We conclude the leases are invalid as a matter of law. We affirm that part of the district court's judgment holding the leases are invalid.

### III

[¶15] The County challenges the district court's decision concluding the Lessees were entitled to a return of the bonus payments relating to the leases. The court held the County was unjustly enriched, and the County's affirmative defense of laches failed.

[¶16] In *Stenehjem ex rel. State v. Nat'l Audubon Soc'y, Inc.*, 2014 ND 71, ¶ 12, 844 N.W.2d 892, this Court discussed the equitable defense of laches:

6

A "stale claim" may be barred by the equitable defense of laches. *Sall v. Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Johnson v. State*, 2006 ND 122, ¶ 8, 714 N.W.2d 832. "[L]aches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to another." *Sall*, 2011 ND 202, ¶ 14, 804 N.W.2d 378. "The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state." *Bakken v. Duchscher*, 2013 ND 33, ¶ 19, 827 N.W.2d 17. "The party invoking laches has the burden of proving he was prejudiced because his position has become so changed during the delay that he cannot be restored to the status quo." *Id.*

Whether laches applies to bar a claim is a fact intensive inquiry and must be determined by examining the underlying facts and circumstances of each particular case. *Nat'l Audubon Soc'y, Inc.*, at ¶ 13.

[¶17] The County argues it was disadvantaged by the Lessees' delay in bringing the lawsuit and seeking repayment of the bonuses related to the leases. The district court concluded as a matter of law laches did not apply. The court concluded the two-year delay between the Lessees' knowledge of potential issues with the County's mineral ownership and the start of the lawsuit "does not seem out of [the] ordinary." The court also concluded the County's evidence "in support of their claim of laches is minimal."

[¶18] The Lessees sued the County in September 2015, about three and a half years after executing the leases. The record shows the Lessees received a June 2013 letter informing them of potential issues with the County's mineral ownership. The Lessees contacted the County about the ownership issues by letter in April 2015. The County submitted an affidavit from its auditor stating the bonus payments had already been spent and repayment would cause great hardship. Viewing the evidence and

7

reasonable inferences drawn from the evidence in a light favorable to the County, we conclude there are genuine issues of material fact as to whether laches applies to bar the Lessees' claim for repayment of the bonuses. We reverse that part of the judgment and remand for proceedings related to whether the Lessees' delay in bringing their lawsuit was unreasonable, and whether the County was prejudiced by the delay.

IV

[¶19] The parties' remaining arguments are either unnecessary to our decision or without merit. The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

[¶20]  Jon J. Jensen
       Jerod E. Tufte
       Daniel J. Crothers
       Lisa Fair McEvers
       Gerald W. VandeWalle, C.J.